IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2010-0197 |
| Appellee, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| MARK NORIKI KASIC, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20084770

Honorable Clark W. Munger, Judge

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED WITH INSTRUCTIONS

---

Thomas C. Horne, Arizona Attorney General
  By Kent E. Cattani and Alan L. Amann                      Tucson
                                        Attorneys for Appellee

John William Lovell                                  Tucson
                                      Attorney for Appellant

---

V Á S Q U E Z, Presiding Judge.

¶1        Mark Kasic, Jr. was convicted after a jury trial of thirty-two felonies arising from six arsons and one attempted arson committed over a one-year period beginning when he was seventeen years of age.  Because a number of the offenses were committed when Kasic was a juvenile, he contends his combination of concurrent and consecutive prison sentences totaling 139.75 years violates the Eighth Amendment's prohibition against cruel and unusual punishment under *Graham v. Florida*, ___ U.S. ___, 130 S. Ct. 2011 (2010).[1]  He also challenges two of his arson convictions, arguing there was insufficient evidence to support them.  We conclude Kasic's sentences do not violate the Eighth Amendment, but modify his convictions for arson of property and remand for resentencing on those counts.

**Factual Background and Procedural History**

¶2        Between August 2007 and August 2008, Kasic committed a series of arsons on the east side of Tucson.  Most of the fires involved occupied residences, but two involved palm trees.  All of the house fires were set in the same manner.  Kasic would enter a carport or storage shed between midnight and daybreak, gather flammable materials, and set them on fire, often using an accelerant such as gasoline.  Kasic set all of the house fires while the victims were inside asleep.  The following is a brief description of each of the offenses.

¶3        Around 4:30 a.m. on August 29, 2007, A.F. was awakened by "crackling and popping sounds" and saw a "bright yellow light" coming through a window of the

_____

[1]Of the 139.75 consecutive years, 80.5 were for arsons Kasic committed as a juvenile.

house she shared with her brother, J.O., on East Julia. Kasic had doused lighter fluid on boxes in the carport and set them on fire. Although A.F. and J.O. escaped unharmed, "almost everything [was] destroyed." Only the adobe walls and concrete flooring were salvageable; the rest of the home had to be demolished. The victims' two cars also were destroyed by the fire.

¶4        That same night, Kasic entered the carport of a residence owned by C.D. on East Beverly and set fire to some boxes. C.D.'s neighbor, who saw the fire as he was getting ready for work around 4:30 a.m., extinguished the fire before it spread.

¶5        Kasic set a third fire that night at a home on Shiloh where he entered the carport and set fire to some dressers. The home was occupied by J.B., his girlfriend, D.B., and their children, including a newborn baby. By the time the fire department arrived, J.B. had extinguished the fire but sustained severe burns to his upper body in the process. Two vehicles also were destroyed in the fire.

¶6        Shortly after 1:30 a.m. on August 31, 2007, P.K. awoke when he smelled smoke in his home on East Green Acres. Upon investigating, he discovered a fire in the carport. Kasic had set fire to the interior passenger compartment of a vehicle sitting in the carport, and the fire spread to the house, including the laundry room, kitchen, and back patio. P.K. and his wife, L.K., narrowly escaped the fire, "stumbl[ing] over each other several times" because the house was dark with smoke. In addition to extensive damage to the home and the loss of two vehicles, the fire destroyed boxes of items L.K. had inherited from her mother, pictures of L.K.'s deceased twin brother, and many other items the couple deemed irreplaceable.

3

¶7        On the morning of January 25, 2008, P.T. noticed that materials from her recycle bin and boxes that were in her carport had been set on fire. During her testimony at trial, P.T. also recalled that one July,[2] a large palm tree across the street from her home on East Old Spanish Trail also had been set on fire.

¶8        On March 29, 2008, Kasic set fire to some empty cardboard boxes on shelves in the carport at a residence on East 5th Street, where M.K. lived with her husband and her two stepsons, ages twelve and thirteen. M.K. discovered the fire sometime between 2:00 and 3:00 a.m. when she heard a noise in her carport and then heard her smoke detector go off. The fire caused extensive damage to the home, the storage area, and the victims' personal property.

¶9        At around 2:00 a.m. on August 16, 2008, ten-year-old M.H. woke to the smell of smoke at her home on East Stefan. When she saw fire through her window, M.H. woke her two brothers and father, and they all fled the house into the street. The fire caused extensive damage to an outside storage area, a vehicle, a Quonset hut, and a workshop area where the fire likely originated.

¶10        The last arson occurred on August 17, 2008. At around 4:00 a.m., S.W. woke her father, C.W., because a neighbor had thrown a rock at her bedroom window. The home was on fire. As they were fleeing from the home moments later, the "whole ceiling in the living room area started collapsing from the fire," and the entire house was engulfed in flames. C.W. required treatment for smoke inhalation, and S.W. was taken to

---

[2]There was inconsistent testimony regarding exactly when this fire occurred. However, Kasic does not challenge the sufficiency of the evidence on account of this apparent discrepancy, and it does not affect our analysis.

4

the hospital by ambulance because of second-degree burns to her feet. Kasic had started this fire in the carport area.

¶11 Kasic, who turned eighteen on December 10, 2007, was a juvenile when he committed four of the arsons. On December 15, 2008, he was charged as an adult in a forty-count indictment with seven counts of arson of an occupied structure; one count of attempted arson of an occupied structure; two counts of aggravated assault; seventeen counts of endangerment; eight counts of criminal damage causing damage of $10,000 or more; one count of criminal damage causing damage between $200 and $2,500; and two counts of arson of property having a value of more than $100.[3] The arson of property counts were for fires Kasic had set to two palm trees on two separate occasions.

¶12 Thirty-eight counts ultimately were submitted to the jury, which reached unanimous verdicts on all but five counts.[4] The jury found Kasic guilty of six counts of arson of an occupied structure, fifteen counts of endangerment, one count of attempted arson of an occupied structure, and one count of aggravated assault and found each of these offenses to be of a dangerous nature. The jury also found Kasic guilty of seven counts of criminal damage and two counts of arson of property with a value of $100 or more. He was acquitted of one count of criminal damage. The trial court sentenced him

---

[3]Kasic also was charged with one count of manufacturing, possessing, transporting, selling, or transferring a prohibited weapon; however, this count and a second count of attempted arson were dismissed voluntarily by the state.

[4]As to these five counts, the jury was unable to reach a verdict and the trial court declared a mistrial.

to a combination of enhanced concurrent and consecutive prison terms totaling 139.75 years. This appeal followed.

**The Eighth Amendment and *Graham v. Florida***

¶13 The Eighth Amendment to the United States Constitution prohibits the imposition of "cruel and unusual punishments." U.S. Const. amend. VIII.[5] The prohibition includes not only punishment that historically has been considered barbaric, but also sentences that are grossly disproportionate to the crime committed. *Solem v. Helm*, 463 U.S. 277, 288 (1983). Thus, "[t]he concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham*, ___ U.S. at ___, 130 S. Ct. at 2021, *quoting Weems v. United States*, 217 U.S. 349, 367 (1910) (alteration in *Graham*).

¶14 Relying on *Graham*, Kasic contends his sentences constitute cruel and unusual punishment and are therefore unconstitutional under the Eighth Amendment. He maintains "*Graham* represents a significant shift in the Supreme Court jurisprudence because it focuses on juveniles' unique amenability to rehabilitation rather than on the nature of the punishment as a reason to categorically bar life sentences for youth convicted of non-homicide crimes."

---

[5]Article II, § 15 of the Arizona Constitution is identical, and our supreme court has declined to interpret Arizona's prohibition against cruel and unusual punishment to provide protection greater than does the Eighth Amendment. *See State v. Davis*, 206 Ariz. 377, ¶ 12, 79 P.3d 64, 67-68 (2003).

6

¶15 Because Kasic did not raise this argument in the trial court, we review only for fundamental error. *State v. Joyner*, 215 Ariz. 134, ¶ 5, 158 P.3d 263, 266 (App. 2007). "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005). "We will not disturb a sentence that is within the statutory range absent an abuse of the trial court's discretion." *Joyner*, 215 Ariz. 134, ¶ 5, 158 P.3d at 266. But the imposition of an illegal sentence constitutes fundamental error. *See State v. Thues*, 203 Ariz. 339, ¶ 4, 54 P.3d 368, 369 (App. 2002). Moreover, we review constitutional issues de novo. *State v. Dann*, 220 Ariz. 351, ¶ 27, 207 P.3d 604, 613 (2009).

¶16 In *Graham*, the Court noted that its prior cases addressing the proportionality of sentences fall within two general classifications. ___ U.S. at ___, 130 S. Ct. at 2021. The first involves challenges to the length of term-of-years sentences and considers all of the circumstances in a particular case. *Id.* The second addresses the proportionality standard by imposing categorical restrictions on the death penalty either because the death penalty is disproportionate given the nature of the offense or the characteristics of the offender. *Id.*; *see also Roper v. Simmons*, 543 U.S. 551 (2005) (categorically excluding defendants under eighteen years of age from death penalty); *Atkins v. Virginia*, 536 U.S. 304 (2002) (applying categorical exclusion to mentally impaired); *Enmund v. Florida*, 458 U.S. 782 (1982) (prohibiting capital punishment for nonhomicide offenses).

¶17    For the first time in *Graham*, the Court addressed the issue of proportionality in the context of a categorical challenge to a term-of-years sentence in a nonhomicide case. ___ U.S. at ___, 130 S. Ct. at 2022. There, sixteen-year-old Terrance Graham was convicted pursuant to a plea agreement of armed burglary and another offense. *Graham*, ___ U.S. at ___, 130 S. Ct. at 2018. Under the agreement, the trial court sentenced him to probation and withheld adjudication of guilt. *Id.* When Graham subsequently violated the terms of his probation by committing additional crimes, the court adjudicated him guilty of the earlier charges, revoked his probation, and sentenced him to life in prison without the possibility for release for the armed burglary conviction. *Graham*, ___ U.S. at ___, 130 S. Ct. at 2019-20. Under Florida law, Graham was eligible to receive a minimum sentence of five years, and the state had recommended a thirty-year prison term for the armed burglary conviction. *Id.*

¶18    In deciding to apply the categorical approach to Graham's sentence, the Court noted that the case "implicate[d] a particular type of sentence as it applies to an entire class of offenders who have committed a range of crimes." *Graham*, ___ U.S. at ___, 130 S. Ct. at 2022-23. The Court recognized that life without parole is "'the second most severe penalty permitted by law,'" *id.*, *quoting Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring), and it concluded that such sentences are disproportionately harsher for juveniles than for adults. *Graham*, ___ U.S. at ___, 130 S. Ct. at 2028. It reasoned that "a juvenile offender will on average serve more years and a greater percentage of his life in prison than an adult offender. *Id.* A sixteen-year-old and

8

a seventy-five-year-old each sentenced to life without parole receive the same punishment in name only." *Id.*

¶19 The Court further stated that juveniles are "less deserving of the most severe punishments" because, compared to adults, they exhibit a "lack of maturity and an underdeveloped sense of responsibility." *Id.* at 2026-28. And given their lack of maturity and diminished culpability, states must give juvenile offenders an opportunity to "obtain release based on demonstrated maturity and rehabilitation." *Id.* at 2030. The Court thus held the Eighth Amendment categorically prohibits imposing a life-without-parole sentence on a juvenile offender for a nonhomicide offense. *Id.*

¶20 Kasic argues the "reasons underlying the Court's decision in *Graham* are applicable to juveniles, such as [him], serving a term-of-years sentence exceeding the juvenile's life expectancy." We disagree. The Court made clear that "[t]he instant case concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense." *Graham*, ___ U.S. at ___, 130 S. Ct. at 2023.

> This clear line is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment. Because "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood," those who were below that age when the offense was committed may not be sentenced to life without parole for a nonhomicide crime.

*Id.* at 2030, *quoting Roper*, 543 U.S. at 574. And the Court emphasized "that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender

9

during his natural life." *Graham*, ___ U.S. at ___, 130 S. Ct. at 2030. We conclude *Graham* does not categorically bar the sentences imposed in this case, and we decline to extend its reasoning in the manner Kasic urges.

¶21 Although we acknowledge juveniles generally are less culpable than their adult counterparts, *Roper*, 543 U.S. at 569, we also conclude Kasic's sentences are not "constitutionally excessive" after considering all of the circumstances of his case. *Graham*, 130 S. Ct. at 2021.

¶22 In determining whether Kasic's sentence is grossly disproportionate, we begin by comparing the gravity of the offenses and the severity of the combined sentence. *Harmelin*, 501 U.S. at 1005. Only if this threshold comparison leads to an inference of gross disproportionality do we then compare Kasic's sentence with the sentences received by others in this state and with the sentences imposed for the same crimes in other states. *Id.* If the intra- and inter-jurisdictional comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual. *Id.*

¶23 Here, unlike Graham, who was sentenced to life without parole for one felony conviction, Kasic was convicted of thirty-two felonies involving multiple victims and the jury determined the majority of the offenses were of a dangerous nature. Moreover, the longest prison term Kasic received for any single count was 15.75 years, and he does not argue on appeal that his individual sentences, viewed separately, constitute cruel and unusual punishment.

10

¶24 As a general rule, we do not consider the imposition of consecutive sentences in the proportionality inquiry, *State v. Berger*, 212 Ariz. 473, ¶ 27, 134 P.3d 378, 383 (2006), and Kasic has not convinced us that departure from the general rule would be appropriate in this case. "A defendant has no constitutional right to concurrent sentences for . . . separate crimes involving separate acts." *State v. Jonas*, 164 Ariz. 242, 249, 792 P.2d 705, 712 (1990). The proper analysis "focuses on the sentence imposed for each specific crime, not the cumulative sentence." *United States v. Aiello*, 864 F.2d 257, 265 (2d Cir. 1988). "[I]f a sentence for a particular offense is not disproportionately long, it does not become so merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in aggregate." *Berger*, 212 Ariz. 473, ¶ 28, 134 P.3d at 384. "This proposition holds true even if a defendant faces a total sentence exceeding a normal life expectancy as a result of consecutive sentences." *Id.*

¶25 In particular, the crime of arson of an occupied structure undeniably is a very serious offense. *See State v. Davis*, 206 Ariz. 377, ¶ 40, 79 P.3d 64, 73 (2003). And after considering aggravating and mitigating circumstances, including that Kasic was a juvenile when he committed four of the arsons, for the second and subsequent arson counts the trial court imposed no greater than the "statutorily mandated minimum sentence for each of [Kasic's] separate, serious offenses." *Berger*, 212 Ariz. 473, ¶ 33,

134 P.3d at 385; *see also* A.R.S. § 13-702.02.[6]  Moreover, the sentences are "amply supported," *Berger*, 212 Ariz. 473, ¶ 36, 134 P.3d at 385, by evidence establishing that Kasic intentionally set fire to numerous homes late at night or during the early morning hours while the residents were inside sleeping.  Two of the arsons caused serious physical injury and all of the arsons, combined, resulted in hundreds of thousands of dollars in property damage.  Moreover, Kasic's numerous felony convictions do not arise from an isolated occurrence but were carried out over a one-year period.

¶26            We agree with the state that although Florida's penological goals were not sufficient to justify the life-without-parole sentence imposed in *Graham*, different considerations apply to consecutive term-of-years sentences based on multiple counts and multiple victims.  We conclude that Kasic's sentences, viewed individually and in the aggregate, further Arizona's "penological goals and thus reflect[] 'a rational legislative judgment, entitled to deference.'"  *Berger*, 212 Ariz. 473, ¶ 17, 134 P.3d at 382, *quoting Ewing v. California*, 538 U.S. 11, 30 (2003).

¶27            And because our "threshold comparison of the crime[s] committed and the sentence[s] imposed [has not led] us to an inference of gross disproportionality," there is no need to conduct a comparative analysis of Kasic's sentences with others in Arizona or across the nation.  *Harmelin*, 501 U.S. at 1005.  For these reasons, we hold that the Eighth Amendment does not prohibit Kasic's sentences for the crimes he committed as a

---

[6]Although the trial court referred to § 13-702(B)(2) in the sentencing minute entry as to counts two, three, and four, it is apparent the court meant to refer to § 13-702.02, which was in effect at the time Kasic committed his offenses.

juvenile. For the same reasons, we necessarily reject his second argument, which asks us to extend *Graham* even further and apply it to crimes he committed as an adult.

**Convictions for Arson of Property**

¶28 Kasic next contends the state failed to prove all of the elements of arson of property in counts thirty-seven and thirty-eight. Specifically, Kasic argues the state presented insufficient evidence that the palm trees in question were "property" as defined in A.R.S. § 13-1701(3), and even if they were property, the state presented insufficient evidence that each tree had a value of $100 or more, an element necessary for a class five felony classification. He acknowledges he did not make these arguments in the trial court. We therefore review only for fundamental, prejudicial error. *Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607.

¶29 A conviction must be supported by substantial evidence of guilt. *State v. Bearup*, 221 Ariz. 163, ¶ 16, 211 P.3d 684, 688 (2009). "Substantial evidence is proof that 'reasonable persons could accept as adequate . . . to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *Id*., *quoting State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980) (alteration in *Jones*). In determining whether substantial evidence exists, we view the facts in the light most favorable to sustaining the jury verdicts and resolve all reasonable inferences against Kasic. *State v. McKenna*, 222 Ariz. 396, ¶ 5, 214 P.3d 1037, 1040 (App. 2009). Evidence sufficient to support a conviction can be direct or circumstantial. *State v. Pena*, 209 Ariz. 503, ¶ 7, 104 P.3d 873, 875 (App. 2005). And we will reverse a conviction "only if 'there is a complete absence of probative facts to support [the jury's] conclusion.'" *State v. Carlisle*, 198 Ariz. 203, ¶ 11,

13

8 P.3d 391, 394 (App. 2000), *quoting State v. Mauro*, 159 Ariz. 186, 206, 766 P.2d 59, 79 (1988).

**¶30**      A person commits arson of property by knowingly and unlawfully damaging property by knowingly causing a fire. A.R.S. § 13-1703(A). "Property" is defined as "anything other than a structure which has value, tangible or intangible, public or private, real or personal . . . ." § 13-1701(3). And the classification of the offense depends on the value of the property. "Arson of property is a class 5 felony if the property had a value of more than one hundred dollars but not more than one thousand dollars. Arson of property is a class 1 misdemeanor if the property had a value of one hundred dollars or less." § 13-1703(B).

**¶31**      Here, although the state elicited testimony that the palm trees were "very large" and "very old," the state presented no evidence about their value. We agree with the state that the jury reasonably could infer the palm trees had some inherent value and therefore were property for purposes of the statute. We cannot agree however that "[t]he jurors were . . . entitled to determine, as a matter of common sense, that the palm trees were worth $100 or more." *See State v. Rushing*, 156 Ariz. 1, 4-5, 749 P.2d 910, 913-14 (1988) (modifying theft conviction because insufficient evidence of value). Absent any evidence regarding the value of the trees, we conclude there was insufficient evidence to support Kasic's convictions for arson of property as charged in counts thirty-seven and thirty-eight, and vacate those convictions and the accompanying sentences. *See State v. Fimbres*, 222 Ariz. 293, ¶ 23, 213 P.3d 1020, 1027 (App. 2009) (fundamental error if theft classification not supported by substantial evidence of property value).

14

**Disposition**

¶32     For the reasons set forth above, we affirm Kasic's convictions and sentences with the exception of counts thirty-seven and thirty-eight, which we modify to reflect that they are for arson of property having a value less than $100, class one misdemeanors pursuant to A.R.S. § 13-1703(B), and remand this case for resentencing on those counts.

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

CONCURRING:

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge