*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0209p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

CHAZ BUNCH,

        *Petitioner-Appellant,*

        *v.*

No. 10-3426

KEITH SMITH,

        *Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:09-cv-901—Dan A. Polster, District Judge.

Argued: June 7, 2012

Decided and Filed: July 6, 2012

Before: ROGERS, GRIFFIN, and DONALD, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Stephen P. Hardwick, OHIO PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Lauren Suzanne Kuley, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Stephen P. Hardwick, OHIO PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Jerri L. Fosnaught, Alexandra T. Schimmer, Matthew A. Kanai, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

_____

**OPINION**

_____

ROGERS, Circuit Judge. Chaz Bunch was convicted in Ohio state court of robbing, kidnaping, and repeatedly raping a young woman when he was 16 years old. The state trial court sentenced Bunch to consecutive, fixed terms totaling 89 years' imprisonment. Bunch appealed, arguing, among other things, that the trial court violated the Eighth Amendment's prohibition on cruel and unusual punishments by sentencing

1

him to the functional equivalent of life without parole for crimes he committed as a juvenile. The Ohio Court of Appeals, however, rejected this argument and the Ohio Supreme Court denied Bunch discretionary review. Bunch then filed a habeas petition, reasserting his Eighth Amendment claim, but the district court denied Bunch relief. Bunch now appeals, arguing that his lengthy prison sentence is tantamount to a life sentence and therefore runs afoul of the intervening Supreme Court decision in *Graham v. Florida*, which held that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." 130 S. Ct. 2011, 2034 (2010).

Bunch is not entitled to habeas relief. Even if we assume that *Graham* applies to Bunch's case on collateral review, that case does not clearly establish that consecutive, fixed-term sentences for juveniles who have committed multiple nonhomicide offenses are unconstitutional when they amount to the practical equivalent of life without parole.

This case arises from the horrific robbery, kidnaping, and repeated rape of M.K., a 22-year-old female Youngstown State University student. On an evening in 2001, M.K. arrived at her workplace. As M.K. exited her vehicle, she noticed a black car drive up the street and park a few houses away. M.K. then saw a man wearing a mask running toward her. The man, later identified as Brandon Moore, pointed a gun at M.K., ordered her to hand over her money and belongings, and told her to get into the passenger seat of her car. Once M.K. was seated, Moore got into the driver's seat and drove away, following the black car.

At some point, the two cars stopped. A second gunman, Bunch, exited the black car and entered M.K.'s car through the rear passenger's side door. Bunch and Moore both pointed their guns at M.K. The cars then traveled to a gravel lot and Bunch ordered M.K. out of the car. While holding M.K. at gunpoint, Bunch and Moore took turns orally raping her. Bunch and Moore then forced M.K. to the trunk and they anally raped her. While this was occurring, Jamar Callier emerged from the black car and stole some

of M.K.'s belongings from the trunk. Bunch then threw M.K. to the ground and, while they were still armed, Bunch and Moore vaginally and orally raped her.

Callier eventually stopped the attack and put M.K. back in her car. M.K. quickly locked her doors and drove away. Police later tracked down the perpetrators based on the black car's license plate number, which M.K. managed to memorize during the ordeal.

Bunch, who was 16 years old at the time of the attack, was indicted on multiple offenses. Bunch went to trial and a jury found him guilty of three counts of rape, three counts of complicity to commit rape, one count of aggravated robbery, one count of conspiracy to commit aggravated robbery, one count of kidnaping, one count of misdemeanor menacing, and all related firearm specifications.

The trial court sentenced Bunch to the maximum term of imprisonment on all of the charges and ordered that he serve each of the felony sentences consecutively. Bunch appealed and, while most of his convictions were affirmed, his conspiracy conviction was vacated and his case was remanded for resentencing.

On remand, the trial court sentenced Bunch to the maximum term of imprisonment on each of the remaining counts—10 years for each of the three counts of rape, 10 years for each of the three counts of complicity to commit rape, 10 years for aggravated robbery, 10 years for kidnaping, and 180 days for misdemeanor menacing. The trial court also sentenced Bunch to nine years for the firearm specifications. The trial court ordered Bunch to serve his sentences for the felony convictions and firearm specifications consecutively, for a total of 89 years' imprisonment. The trial court explained its sentence, saying to Bunch, "I just have to make sure that you don't get out of the penitentiary. I've got to do everything I can to keep you there, because it would be a mistake to have you back in society."

Bunch appealed, arguing, among other things, that the trial court violated the Eighth Amendment's prohibition on cruel and unusual punishments by sentencing him to 89 years' imprisonment, the functional equivalent of life without parole, for crimes

he committed as a juvenile. *State v. Bunch*, No. 06 MA 106, 2007 WL 4696832, at *5-*6 (Ohio Ct. App. Dec. 21, 2007). The Ohio Court of Appeals, however, explicitly rejected this argument and affirmed the judgment of the trial court. *Id.* at *7. The Ohio Supreme Court denied Bunch's petition for discretionary review. *State v. Bunch*, 886 N.E.2d 872 (Ohio 2008).

Bunch then filed a 28 U.S.C. § 2254 habeas petition in federal district court, arguing, once again, that his 89-year sentence violated the Eighth Amendment. The magistrate judge recommended that the district court withhold judgment on Bunch's Eighth Amendment claim until the Supreme Court decided *Graham v. Florida*, regarding the constitutionality of life without parole sentences for juveniles convicted of nonhomicide offenses. *Bunch v. Smith*, No. 1:09CV0901, 2009 WL 5947369, at *20 (N.D. Ohio Dec. 8, 2009). The magistrate judge reasoned that there was "at least a possibility that a broadly-worded decision in *Graham* could affect Bunch." *Id.*

The district court, however, did not accept the magistrate judge's recommendation, finding *Graham* "factually distinguishable from the instant case." *Bunch v. Smith*, No. 1:09CV901, 2010 WL 750116, at *2 (N.D. Ohio Mar. 2, 2010). The district court reasoned:

> The trial court in *Graham* imposed two life sentences without parole on the juvenile offender. The court in this case imposed ten year sentences on each of eight distinct felonies, to be served consecutively, along with nine years for firearm specifications, also to be served consecutively–for an aggregate prison sentence of 89 years. And, despite the Magistrate Judge's prompting, there is still no indication that Bunch will not be eligible for parole prior to completion of that sentence. Thus, any ruling the Supreme Court issues in *Graham* will not apply to this case. Even if the Supreme Court concludes that it violates the Constitution to impose a life sentence without parole on a juvenile offender, the undersigned would have to create new law by extending that ruling to this case, something it is not inclined to do.

*Id.* The district court ultimately denied Bunch's § 2254 petition and denied him a certificate of appealability. *Id.*

Bunch then filed a timely notice of appeal and a motion for a certificate of appealability with this court. Shortly thereafter, the Supreme Court decided *Graham*, holding that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." 130 S. Ct. at 2034. This court then granted Bunch a certificate of appealability as to his Eighth Amendment claim.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to Bunch's case because his Eighth Amendment claim was adjudicated on the merits in state court. *See* 28 U.S.C. § 2254(d). Indeed, Bunch argued on direct appeal that his 89-year sentence was the functional equivalent of life without parole and, therefore, violated the Eighth Amendment's prohibition on cruel and unusual punishments. The Ohio Court of Appeals, however, explicitly rejected this argument, and the Ohio Supreme Court denied Bunch's petition for discretionary review. While the state appellate courts issued their decisions before the United States Supreme Court decided *Graham*, Bunch's Eighth Amendment claim was nevertheless adjudicated on the merits in state court. Thus, as both parties agree, AEDPA applies to Bunch's case.

The question before this court then is whether the state court's adjudication of Bunch's Eighth Amendment claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). The Supreme Court has recently clarified that "clearly established Federal Law" means the law that existed at the time of "the last state-court adjudication on the merits." *Greene v. Fisher*, 132 S. Ct. 38, 45 (2011). Here, even if we consider "the last state-court adjudication on the merits" to be the Ohio Supreme Court's decision denying Bunch's petition for discretionary review, that decision was still issued before the United States Supreme Court decided *Graham*. In other words, *Graham* was not on the books until after Bunch exhausted all of his state appeals. An argument could be made, however, that *Graham* nonetheless applies because it sets forth a new rule prohibiting a certain category of punishment for a class of defendants and therefore can be raised on collateral review notwithstanding the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288 (1988). *But see Greene*, 132 S. Ct. at 44

(stating "that the AEDPA and *Teague* inquiries are distinct. The retroactivity rules that govern federal habeas review on the merits—which include *Teague*—are quite separate from the relitigation bar imposed by AEDPA . . . ." (citation omitted)).

We need not resolve this threshold question of whether *Graham* applies to Bunch's case on collateral review because even assuming, without deciding, that *Graham* does apply, Bunch is still not entitled to habeas relief. This is because Bunch's sentence was not contrary to clearly established federal law even if *Graham* is considered a part of that law. While Bunch claims that his sentence runs afoul of *Graham*, that case did not clearly establish that consecutive, fixed-term sentences for juveniles who commit multiple nonhomicide offenses are unconstitutional when they amount to the practical equivalent of life without parole. Thus, the district court properly denied Bunch's habeas petition.

*Graham* is not clearly applicable to this case. In *Graham*, 16-year-old Terrance Graham pled guilty to armed burglary and attempted armed robbery pursuant to a plea agreement. 130 S. Ct. at 2018. Under the agreement, the state trial court withheld adjudication of guilt as to both charges and sentenced Graham to concurrent three-year terms of probation. *Id.* When Graham subsequently violated the terms of his probation by committing additional crimes, the trial court adjudicated him guilty of the earlier charges and revoked his probation. *Id.* at 2019-20. Under Florida law, Graham was eligible to receive a minimum sentence of five years' imprisonment and the state recommended a 30-year prison term. *Id.* at 2019. The trial court, however, sentenced Graham to life in prison without the possibility of release for the armed burglary conviction. *Id.* at 2020. After the Florida Court of Appeals affirmed Graham's sentence, and the Florida Supreme Court denied review, the United States Supreme Court granted certiorari and reversed. *Id.*

The Court noted that *Graham* "implicate[d] a particular type of sentence as it applies to an entire class of offenders who have committed a range of crimes." *Graham*, 130 S. Ct. at 2022-23. The Court first determined that a national consensus had developed against sentencing juvenile nonhomicide offenders to life without parole. *Id.*

at 2023-26. The Court then stated that juveniles "are less deserving of the most severe punishments" because, as compared to adults, they exhibit a "'lack of maturity and an underdeveloped sense of responsibility.'" *Id.* at 2026 (quoting *Roper v. Simmons*, 543 U.S. 551, 569 (2005)). The Court further recognized that life without parole sentences are disproportionately harsher for juveniles than for adults, reasoning that "a juvenile offender will on average serve more years and a greater percentage of his life in prison than an adult offender." *Graham*, 130 S. Ct. at 2028. The Court also concluded that "none of the goals of penal sanctions that have been recognized as legitimate—retribution, deterrence, incapacitation, and rehabilitation— provides an adequate justification" for sentencing juvenile nonhomicide offenders to life without parole. *Id.* (citation omitted). The Court thus held "that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." *Id.* at 2030.

This holding is not clearly applicable to Bunch's case. It is true that Bunch and Graham were both juvenile offenders who did not commit homicide. But while Graham was sentenced to life in prison for committing one nonhomicide offense, Bunch was sentenced to consecutive, fixed-term sentences—the longest of which was 10 years—for committing multiple nonhomicide offenses. In *Graham*, the Court made it clear that "[t]he instant case concerns *only* those juvenile offenders sentenced to *life without parole* solely for a nonhomicide offense." *Id.* at 2023 (emphasis added). The Court stressed that drawing a "clear line" was "necessary to prevent the possibility that *life without parole sentences* will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment." *Id.* at 2030 (emphasis added). The Court reasoned that "[b]ecause 'the age of 18 is the point where society draws the line for many purposes between childhood and adulthood,' those who were below that age when the offense was committed may not be sentenced to *life without parole* for a nonhomicide crime." *Id.* (emphasis added) (quoting *Roper*, 543 U.S. at 574). The Court did not address juvenile offenders, like Bunch, who received consecutive, fixed-term sentences for committing multiple nonhomicide offenses. Thus, we cannot say that Bunch's sentence was contrary to clearly established federal law.

To be sure, Bunch's 89-year aggregate sentence may end up being the functional equivalent of life without parole.[1]  For this reason, Bunch argues that he will not be given the "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" called for in *Graham*.  130 S. Ct. at 2030.  But in *Graham*, the Court said that a juvenile is entitled to such a "realistic opportunity to obtain release" if a state imposes a sentence of "life."  *Id.* at 2034.  That did not happen in this case.  And since no federal court has ever extended *Graham*'s holding beyond its plain language to a juvenile offender who received consecutive, fixed-term sentences, we cannot say that Bunch's sentence was contrary to clearly established federal law.

The Court's analysis in *Graham* supports this conclusion because the analysis did not encompass consecutive, fixed-term sentences.  Since *Graham* involved a categorical challenge to a particular type of sentence, the Court first considered "'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue."  *Id.* at 2022 (quoting *Roper*, 543 U.S. at 572).  The Court analyzed state and federal sentencing laws, tallying the number of jurisdictions that allowed juvenile nonhomicide offenders to be sentenced to "life without parole."  *Graham*, 130 S. Ct. at 2023.  The Court then examined "actual sentencing practices in jurisdictions where the sentence in question is permitted by statute" and concluded that "[a]lthough these statutory schemes contain no explicit prohibition on sentences of life without parole for juvenile nonhomicide offenders, those sentences are most infrequent."  *Id.* Indeed, the Court found only "123 juvenile nonhomicide offenders serving life without parole sentences" in the United States.  *Id.* at 2024.  Based on this and other data, the Court concluded that the sentence of "life without parole for juvenile nonhomicide offenders . . . is exceedingly rare.  And it is fair to say that a national consensus has developed against it."  *Id.* at 2026 (citation omitted).

---

[1]Bunch claims, and the Warden does not dispute, that under Ohio's recently revised sentencing laws, he will be at least 95 years old before he is eligible for release from prison.

The Court, however, did not analyze sentencing laws or actual sentencing practices regarding consecutive, fixed-term sentences for juvenile nonhomicide offenders. This demonstrates that the Court did not even consider the constitutionality of such sentences, let alone clearly establish that they can violate the Eighth Amendment's prohibition on cruel and unusual punishments. Thus, in light of the Court's analysis in *Graham*, Bunch's sentence does not violate clearly established federal law.

This conclusion is further supported by the fact that courts across the country are split over whether *Graham* bars a court from sentencing a juvenile nonhomicide offender to consecutive, fixed terms resulting in an aggregate sentence that exceeds the defendant's life expectancy. Some courts have held that such a sentence is a de facto life without parole sentence and therefore violates the spirit, if not the letter, of *Graham*. *See, e.g., People v. J.I.A.*, 127 Cal. Rptr. 3d 141, 149 (Cal. Ct. App. 2011); *People v. Nunez*, 125 Cal. Rptr. 3d 616, 624 (Cal. Ct. App. 2011).[2] Other courts, however, have rejected the de facto life sentence argument, holding that *Graham* only applies to juvenile nonhomicide offenders expressly sentenced to "life without parole." *See, e.g., Henry v. State*, 82 So.3d 1084, 1089 (Fla. Ct. App. 2012); *State v. Kasic*, 265 P.3d 410, 415 (Ariz. Ct. App. 2011). This split demonstrates that Bunch's expansive reading of *Graham* is not clearly established. Perhaps the Supreme Court, or another federal court on direct review, will decide that very lengthy, consecutive, fixed-term sentences for juvenile nonhomicide offenders violate the Eighth Amendment. But until the Supreme Court rules to that effect, Bunch's sentence does not violate clearly established federal law.

A contrary result would lead to a lot of questions. As one court persuasively wrote:

> At what number of years would the Eighth Amendment become implicated in the sentencing of a juvenile: twenty, thirty, forty, fifty,

---

[2]The California Supreme Court recently granted review of these decisions. *See People v. J.I.A.*, 260 P.3d 283 (Cal. 2011); *People v. Nunez*, 255 P.3d 951 (Cal. 2011).

some lesser or greater number? Would gain time be taken into account? Could the number vary from offender to offender based on race, gender, socioeconomic class or other criteria? Does the number of crimes matter? There is language in the *Graham* majority opinion that suggests that no matter the number of offenses or victims or type of crime, a juvenile may not receive a sentence that will cause him to spend his entire life incarcerated without a chance for rehabilitation, in which case it would make no logical difference whether the sentence is "life" or 107 years. Without any tools to work with, however, we can only apply *Graham* as it is written.

*Henry*, 82 So.3d at 1089 (footnote omitted). In *Graham*, the Court wrote that "[t]he Constitution prohibits the imposition of a *life without parole sentence* on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of *life* it must provide him or her with some realistic opportunity to obtain release before the end of that term." *Graham*, 130 S. Ct. at 2034 (emphasis added). Since Bunch was not sentenced to "life without parole," his sentence does not violate clearly established federal law. As one court put it: "[i]f the Supreme Court has more in mind, it will have to say what that is." *Henry*, 82 So.3d at 1089.

Finally, the Supreme Court's recent decision in *Miller v. Alabama*, 567 U.S. ____ (2012), does not warrant a different result. In *Miller*, the Court extended the reasoning in *Graham* to mandatory sentences of life without parole for juveniles convicted of homicide offenses. But, once again, the Court did not address juvenile offenders, like Bunch, who received consecutive, fixed-term sentences for committing multiple nonhomicide offenses. Thus, even if we assume that *Miller* also applies to Bunch's case on collateral review, Bunch is still not entitled to habeas relief.

For the foregoing reasons, we affirm the judgment of the district court.