131 Nev., Advance Opinion 98

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| THE STATE OF NEVADA,<br>Appellant,<br>vs.<br>ANDRE D. BOSTON,<br>Respondent. | No. 62931<br><br>FILED<br><br>DEC 31 2015<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY _____<br>CHIEF DEPUTY CLERK |

Appeal from a district court order granting a post-conviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Elissa F. Cadish, Judge.

*Vacated and remanded for further proceedings.*

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Jonathan VanBoskerck, Chief Deputy District Attorney, and Parker P. Brooks, Deputy District Attorney, Clark County, for Appellant.

Law Offices of Martin Hart, LLC, and Martin Hart, Las Vegas, for Respondent.

_____

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, CHERRY, J.:

The Clark County District Court sentenced Andre Boston, a juvenile at the time he committed his crimes, to serve 14 consecutive life

3/21/16: Corrected per letter to publishers. CJ

1/6/16: Corrected per Order Modifying Opinion. CJ

15-40130

terms with the possibility of parole, plus a consecutive term of 92 years in prison. Boston subsequently filed a post-conviction petition for a writ of habeas corpus. The district court granted the petition based on *Graham v. Florida*, 560 U.S. 48 (2010), wherein the United States Supreme Court concluded that a sentence of life without the possibility of parole for a nonhomicide offense committed when the defendant was a juvenile constitutes cruel and unusual punishment. In this case, we consider whether the holding in *Graham* applies when an aggregate sentence imposed against a juvenile defender convicted of more than one nonhomicide offense is the equivalent of a life-without-parole sentence. We hold that it does. We further conclude that the decision in *Graham* provides good cause and actual prejudice for Boston's untimely and successive petition. Additionally, we conclude A.B. 267 remedies Boston's unconstitutional sentence.

## FACTS AND PROCEDURAL HISTORY

In 1983, 16-year-old Andre Boston committed a number of horrific crimes against a 12-year-old victim, a 15-year-old victim, and their stepmother. Boston was convicted, pursuant to a jury verdict, of first-degree kidnapping with the use of a deadly weapon, six counts of sexual assault with the use of a deadly weapon, robbery with the use of a deadly weapon, and attempted dissuading a victim/witness from reporting a crime with the use of a deadly weapon for the crimes committed against the 15-year-old victim. He was also convicted of burglary, lewdness with a minor with the use of a deadly weapon, assault with the use of a deadly weapon, and battery with the use of a deadly weapon, for the acts committed against the 12-year-old victim and her stepmother. The district court sentenced Boston to 14 life sentences with the possibility of

parole, plus a consecutive 92 years in prison. Thus, Boston will have to serve approximately 100 years in prison before he is eligible for parole.

Boston appealed from his judgment of conviction, and this court dismissed the appeal. *Boston v. State*, Docket No. 19607 (Order Dismissing Appeal, October 24, 1989). The remittitur issued on November 14, 1989.

In 1990, Boston filed a petition for post-conviction relief pursuant to NRS 177.315. The district court denied the petition without an evidentiary hearing, and this court remanded for an evidentiary hearing. *Boston v. State*, Docket No. 21871 (Order of Remand, September 30, 1991). After holding an evidentiary hearing, the district court again denied Boston's petition. Boston untimely appealed the district court's denial, which this court dismissed for lack of jurisdiction. *Boston v. State*, Docket No. 26034 (Order Dismissing Appeal, October 7, 1994).

In 2011, Boston filed a pro se post-conviction petition for a writ of habeas corpus in the district court. Boston claimed that his sentence constituted cruel and unusual punishment pursuant to *Graham v. Florida*, 560 U.S. 48 (2010). The district court denied the petition without considering Boston's good cause argument, and Boston appealed. This court affirmed in part, reversed in part, and remanded the case to the district court to consider whether *Graham* prohibits aggregate sentences that are the functional equivalent of life without the possibility of parole and whether *Graham* provided good cause to excuse the procedural defects. *Boston v. State*, Docket No. 58216 (Order Affirming in Part, Reversing in Part and Remanding, February 3, 2012). Following an evidentiary hearing, the district court determined that *Graham* prohibited aggregate sentences that were the functional equivalent of life without the

(O) 1947A

possibility of parole and that *Graham* also provided good cause and prejudice to overcome the procedural bar. Accordingly, the district court granted Boston's petition and ordered a new sentencing hearing. The State appeals from the order granting the petition.

While Boston's instant appeal was pending before us, the Nevada Legislature passed Assembly Bill No. 267. A.B. 267, 78th Leg. (Nev. 2015). A.B. 267 amended NRS 176.025 and NRS Chapter 213, and took effect on October 1, 2015. *Id.* As of October 1 of this year, NRS 176.025 prohibits sentences of life imprisonment without the possibility of parole if the offender was a juvenile at the time he or she committed the crime. *Id.* A.B. 267 also adds a new subsection to NRS Chapter 213, which makes prisoners eligible for parole after 15 years if their sentences were for nonhomicide crimes committed while they were juveniles. *Id.*

Based on the new law, we issued an Order Directing Supplemental Briefing and Inviting Amicus Briefing. *Boston v. State*, Docket No. 62931 (Order Directing Supplemental Briefing and Inviting Amicus Briefing, June 19, 2015). In accordance with our order, the State, Boston, and amici filed supplemental briefs.

### DISCUSSION

*Procedural bars*

Boston filed his petition on January 5, 2011—more than 21 years after this court issued the remittitur from his direct appeal. Thus, Boston's petition was untimely. *See* NRS 34.726(1). Boston's petition was also untimely because he filed it nearly 17 years after the effective date of NRS 34.726. *See* 1991 Nev. Stat., ch. 44, §§ 5, 33, at 75-76, 92; *Pellegrini v. State*, 117 Nev. 860, 874-75, 34 P.3d 519, 529 (2001). Furthermore, Boston's petition was successive, as he previously filed a post-conviction

petition for a writ of habeas corpus. *See* NRS 34.810(1)(b)(2). Accordingly, Boston's petition is procedurally barred absent a demonstration of good cause and actual prejudice. *See* NRS 34.726(1); NRS 34.810(1)(b); NRS 34.810(3).

Boston asserts that the U.S. Supreme Court's decision in *Graham v. Florida*, 560 U.S. 48 (2010), constitutes good cause to overcome the procedural bars. We have recognized that good cause may be established where the "legal basis for the claim was not reasonably available" for a prior, timely petition. *Bejarano v. State*, 122 Nev. 1066, 1072, 146 P.3d 265, 270 (2006). The Supreme Court did not decide *Graham* until 2010, and Boston filed his petition within one year of the Court's decision. Therefore, Boston has demonstrated good cause for the late filing if *Graham* applies to aggregate sentences that are the functional equivalent of life without the possibility of parole.[1] To demonstrate actual prejudice, Boston ~~Graham~~ must show error that worked to his actual and substantial disadvantage. *See Hogan v. Warden*, 109 Nev. 952, 960, 860 P.2d 710, 716 (1993).

---

[1]We also recognize that the decision in *Graham* would only apply in this case if *Graham* applied retroactively. *See Teague v. Lane*, 489 U.S. 288, 310 (1989) ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."). Using our well-established retroactivity analysis, we conclude that *Graham* applies retroactively because it is a new rule that falls within one of the exceptions to the general rule of nonretroactivity because the decision in *Graham* prohibits a specific punishment for a class of persons. *See Colwell v. State*, 118 Nev. 807, 817, 59 P.3d 463, 470 (2002); *see also Moore v. Biter*, 725 F.3d 1184, 1190-91 (9th Cir. 2013) (concluding that *Graham* established a new rule that was retroactive on collateral review).

*Graham v. Florida*

Boston argues that *Graham* prohibits aggregate sentences that constitute life without the possibility of parole for a nonhomicide offense committed by a juvenile. We agree.

In *Graham*, Graham, at the age of 16, pleaded guilty to armed burglary with assault or battery and attempted armed robbery. 560 U.S. at 53-54. The Florida court initially placed Graham on probation. *Id.* at 54. Within six months, Graham was arrested for committing additional robberies and other infractions, in violation of his probation. *Id.* at 54-55. After revoking probation, the court sentenced Graham to life in prison for the armed burglary conviction and 15 years for the attempted robbery conviction. *Id.* at 57. Because Florida abolished its parole system, the sentence required that Graham spend the rest of his life in prison unless he received a grant of executive clemency. *Id.*

On review, the U.S. Supreme Court considered whether a juvenile offender could receive a sentence of life without the possibility of parole for a nonhomicide offense. *Id.* at 52-53. The Court held that such a sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* at 74. In reaching its decision, the Court surveyed every state that allowed a juvenile to be sentenced to life without the possibility of parole and noted that there were only 123 juvenile nonhomicide offenders serving life without the possibility of parole in this country; the Court reported five in Nevada. *Id.* at 62-64. This information led the Court to believe that there is a national consensus *against* sentencing juvenile nonhomicide offenders to life without the possibility of parole. *Id.* at 67.

The Supreme Court reasoned that "[j]uveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults." *Id.* at 68 (quoting *Roper v. Simmons*, 543 U.S. 551, 570 (2005)). Moreover, juveniles who receive a sentence of life without the possibility of parole will spend a greater percentage of their lives in prison than adults serving the same sentence. *Id.* at 70. Consequently, the Court concluded that "none of the goals of penal sanctions that have been recognized as legitimate—retribution, deterrence, incapacitation, and rehabilitation—provides an adequate justification" for imposing such a sentence against a nonhomicide juvenile offender. *Id.* at 71 (internal citation omitted). The Court's rule "prohibit[s] States from making the judgment at the outset that those offenders never will be fit to reenter society." *Id.* at 75. The Court also concluded that "[a] State is not required to guarantee eventual freedom to a juvenile offender[,]" but the State must give "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.*

*Applying Graham to aggregate sentences*

Since the Supreme Court's decision, courts have inconsistently decided whether the *Graham* holding prohibits sentences that, when aggregated, constitute the functional equivalent of life without the possibility of parole. Several jurisdictions have concluded that *Graham* prohibits sentences that constitute the functional equivalent of life without the possibility of parole. *See, e.g.*, *Moore*, 725 F.3d at 1191, 1193-94 (explaining that *Graham* focused on sentences that, "regardless of the underlying nonhomicide crime," "mean[ ] that a juvenile is incapable of returning to society," and holding that an aggregate 254-year sentence

was the functional equivalent of life without the possibility of parole); *People v. Caballero*, 282 P.3d 291, 295 (Cal. 2012) (holding that a 110-year-to-life sentence was the functional equivalent of a sentence of life without the possibility of parole); *Floyd v. State*, 87 So. 3d 45, 45 (Fla. Dist. Ct. App. 2012) (holding that an 80-year sentence was the functional equivalent of life without the possibility of parole and unconstitutional). These courts concluded that to allow the functional equivalent of a sentence of life without the possibility of parole for juvenile nonhomicide offenders would frustrate the Supreme Court's reasoning regarding a juvenile's opportunity to demonstrate growth and maturity. *Caballero*, 282 P.3d at 295; *Moore*, 725 F.3d at 1192-93. The juvenile would not have a realistic opportunity for release from prison because the opportunity to receive parole would not arise during the juvenile's natural life expectancy. *Caballero*, 282 P.3d at 295; *Moore*, 725 F.3d at 1194.

In contrast, other courts have concluded that aggregate sentences that constitute the functional equivalent of life without the possibility of parole do not violate the *Graham* rule. *See, e.g., Bunch v. Smith*, 685 F.3d 546, 550 (6th Cir. 2012), *cert. denied sub nom. Bunch v. Bobby*, 133 S. Ct. 1996 (2013); *State v. Kasic*, 265 P.3d 410, 414-15 (Ariz. Ct. App. 2011). These courts (i.e., the *Bunch* and *Kasic* courts) focus on a passage in *Graham*, which states that "[t]he instant case concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense." 560 U.S. at 63; *see also Bunch*, 685 F.3d at 551; *Kasic*, 265 P.3d at 414. These courts further note that in determining that a national consensus existed, the Supreme Court relied on data regarding juveniles who were specifically sentenced to life in prison without the possibility of parole. *Bunch*, 685 F.3d at 551-52. The *Bunch* court

determined that because the Supreme Court did not consider the number of juveniles who received the functional equivalent of life without the possibility of parole, these cases do not fall within the categorical ban enunciated in *Graham*. *Bunch*, 685 F.3d at 552.

The most significant concern for a non-functional-equivalent court is that *Graham* provides no direction on how to determine when aggregate sentences are the functional equivalent of a sentence of life without the possibility of parole. Instead of applying *Graham* to an aggregate sentence, one court observed that the proper focus was "on the sentence imposed for each specific crime, not the cumulative sentence." *Kasic*, 265 P.3d at 415 (quoting *United States v. Aiello*, 864 F.2d 257, 265 (2d Cir. 1988)). Under this reasoning, if each individual sentence offers the juvenile nonhomicide offender the opportunity for parole, the aggregate sentence is acceptable according to *Graham*.

In the instant case, the State advocates for the non-functional-equivalent approach, arguing that the Supreme Court's holding in *Graham* applies solely to a single sentence for a nonhomicide offense. The State asserts that for *Graham* to apply, three factors must be present: (1) the offender must have been a juvenile when he or she committed the offense; (2) the sentence imposed must be for a single, nonhomicide offense; and (3) the district court must have sentenced the defendant to life without the possibility of parole. We disagree and are persuaded that the *Graham* rule applies to aggregate sentences that are the functional equivalent of a sentence of life without the possibility of parole.

Nowhere in the *Graham* decision does the Supreme Court specifically limit its holding to offenders who were convicted for a *single* nonhomicide offense, and the State does not cite to any language in the

case to support its claim that the *Graham* decision does. Consequently, the State's argument does not comport with *Graham*: Graham did not receive the specific sentence of life without parole; he received the sentence of life in a jurisdiction that abolished its parole system. *Graham*, 560 U.S. at 57. Therefore, just like Boston, Graham received the functional equivalent of life without parole. *See id.*

This court recognizes that the Florida court sentenced Graham to life under a sentencing scheme in which parole is not provided for one offense, *id.*, however, we conclude that if we were to read the Supreme Court's holding as the State argues we should, we would undermine the Court's goal of "prohibit[ing] States from making the judgment at the outset that those offenders never will be fit to reenter society." *Id.* at 75. As this court has previously stated, a sentence of life without the possibility of parole for a juvenile offender "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days." *Naovarath v. State*, 105 Nev. 525, 526, 779 P.2d 944, 944 (1989); *see Graham*, 560 U.S. at 70 (quoting *Naovarath*, 105 Nev. at 526, 779 P.2d at 944); *see also Moore v. Biter*, 725 F.3d 1184, 1191 (9th Cir. 2013) ("Life in prison without the possibility of parole gives [a juvenile] no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope." (quoting *Graham*, 560 U.S. at 74)). The functional-equivalent approach best addresses the concerns enunciated by the U.S. Supreme Court and this court regarding the culpability of juvenile offenders and the potential for growth and maturity of these offenders.

Nothing in our opinion today requires the State to ensure that nonhomicide juvenile offenders are given "eventual freedom." *See Graham*, 560 U.S. at 75. But juvenile offenders must have a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *See id.* We therefore hold that a district court violates the prohibition of cruel and unusual punishment when it sentences a nonhomicide juvenile offender to the functional equivalent of life without the possibility of parole. Because the decision in *Graham* applies to juvenile offenders with aggregate sentences that are the functional equivalent of life without the possibility of parole, we conclude that Boston demonstrates good cause and actual prejudice to overcome the procedural bars, and his ground for relief has merit.

We recognize that our holding today raises complex and difficult issues, not the least of which is when will aggregate sentences be determined to be the functional equivalent of a sentence of life without the possibility of parole. We need not answer this question today for two reasons. First, Boston's aggregate sentences, which require him to serve approximately 100 years before being eligible for parole, are without a doubt the functional equivalent of a sentence of life without the possibility of parole. Second, we need not answer this question because the Legislature has made Boston parole-eligible.

*Assembly Bill No. 267*

In 2015, the Legislature addressed the concerns of juvenile sentencing raised in *Graham* in a significant way in A.B. 267. A.B. 267 prohibits the district courts from sentencing nonhomicide juvenile offenders to life without parole and addresses the parole eligibility of

SUPREME COURT
OF
NEVADA

(O) 1947A

nonhomicide juvenile offenders.[2] A.B. 267, 78th Leg. (Nev. 2015). Amendments to NRS ^Chapter 176.017 direct trial courts to "consider the differences between juvenile and adult offenders, including, without limitation, the diminished culpability of juveniles . . . and the typical characteristics of youth." /A.B. 267 also amended NRS 176.025 to preclude the district courts from sentencing nonhomicide juvenile offenders to life without parole:

> A sentence of death **or life imprisonment without the possibility of parole** must not be imposed or inflicted upon any person convicted of a crime now punishable by death **or life imprisonment without the possibility of parole** who at the time of the commission of the crime was less than 18 years of age. As to such a person, the maximum punishment that may be imposed is life imprisonment . . . **with** the possibility of parole.

A.B. 267 § 2, 78th Leg. (Nev. 2015) (emphasis in original to indicate amendments to statute).

The Legislature further added a new section to NRS Chapter 213, which allows for parole eligibility, after serving 15 years of incarceration, for those who committed nonhomicide crimes as juveniles:

> **1. Notwithstanding any other provision of law, except as otherwise provided in subsection 2 or unless a prisoner is subject to earlier eligibility for parole pursuant to any other provision of law, a prisoner who was sentenced as an adult for an offense that was**

---

[2]If the juvenile's offense results in the death of one victim, the juvenile offender, regardless of the district court's sentence, will be eligible for parole after serving 20 years of imprisonment. A.B. 267; NRS 176.017; NRS 213.1235.

> ***committed when he or she was less than 18
> years of age is eligible for parole as follows:***
>
> > ***(a) For a prisoner who is serving a
> > period of incarceration for having been
> > convicted of an offense or offenses that did
> > not result in the death of a victim, after the
> > prisoner has served 15 calendar years of
> > incarceration, including any time served in a
> > county jail.***

*Id.* § 3(1) (emphasis in original to indicate amendments to statute); NRS 213.12135. Regardless of the minimum prison sentence that the trial court sets for eligibility, the juvenile offender will be parole-eligible after serving a minimum sentence of 15 years.[3] *Id.* § 3(1). These amendatory provisions apply retroactively. *Id.* § 5.

The State argues that *aggregate* sentences that constitute the functional equivalent of life without the possibility of parole are ~~not~~ included with the amendments set forth in A.B. 267. We disagree. Although the record does not reflect whether Boston has ever elected to aggregate his sentences pursuant to NRS 213.1212, the statutory provision recently enacted through A.B. 267 does just that.

The new statutory provision to be set forth in NRS Chapter 213 gives a juvenile offender parole eligibility after 15 years of incarceration "for having been convicted of an offense or *offenses* that did not result in the death of a victim." *Id.* (emphasis added). The plural form of "offense" demonstrates the Legislature's intent to allow parole eligibility after 15 years when a juvenile defendant is convicted of more than one

---

[3]A.B. 267 does *not* guarantee that nonhomicide juvenile offenders will be released on parole after serving 15 years of imprisonment. A.B. 267 solely makes these offenders *eligible* for parole after serving 15 years.

nonhomicide offense and the sentences therefore aggregate. Thus, we conclude that the legislative changes set forth in A.B. 267 apply to aggregate sentences and a nonhomicide juvenile offender is eligible for parole after serving 15 calendar years of incarceration on his or her aggregate sentences.

The district court originally sentenced Boston on October 20, 1988, meaning that he has been incarcerated for at least 27 years and is therefore eligible for parole under A.B. 267. The Legislature has provided all that *Graham* requires—a meaningful opportunity for Boston to obtain release within his lifetime. Accordingly, although we agree with the district court's reasoning—that *Graham* precludes aggregate sentences that constitute the functional equivalent of life without the possibility of parole against nonhomicide juvenile offenders—we nonetheless vacate its order and remand this case to the district court to deny Boston's petition because the judiciary cannot provide him with a better solution than that which the Legislature has already provided.

_____, J.
Cherry

We concur:

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering