[Cite as *State v. Moore*, 2013-Ohio-5868.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 08 MA 20 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | AND |
| BRANDON MOORE, | ) | JUDGMENT ENTRY |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:         Motion for Reconsideration.

JUDGMENT:         Motion Denied.

APPEARANCES:
For Plaintiff-Appellee:         Attorney Paul J. Gains
         Prosecuting Attorney
         Attorney Ralph M. Rivera
         Assistant Prosecuting Attorney
         21 W. Boardman St., 6th Floor
         Youngstown, OH 44503

For Defendant-Appellant:         Attorney Kimberly A. Jolson
         Attorney Rachel S. Bloomekatz
         Jones Day
         325 John H. McConnell Blvd.
         Suite 600
         P.O. Box 165017
         Columbus, OH 43216-5017

JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: December 9, 2013

{¶1} Defendant-Appellant Brandon Moore asks this Court for delayed reconsideration of his resentencing appeal, *State v. Moore (Moore III),* 7th Dist. No. 08 MA 20, 2009-Ohio-1505 as he has no other avenue to avail himself of the retroactive constitutional argument that his sentence violates *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed. 2d 825 (2010). In *Graham,* the United States Supreme Court held that imposing a life sentence without the possibility of parole upon nonhomicide juvenile offenders as a category violates the prohibition against cruel and unusual punishment of the Eighth Amendment to the United States Constitution. The Court reasoned that because juveniles as a category are fundamentally different from adult offenders, they cannot in the first instance be subjected to spending the rest of their natural lives in prison. Rather, they must be afforded a 'meaningful opportunity' to establish that they are rehabilitated and eligible for parole. Moore argues that his 112 year sentence deprives him of a meaningful opportunity to obtain release as contemplated by *Graham,* because the trial court imposed a de facto life sentence, and indicated as much at sentencing.

{¶2} We are unpersuaded by Moore's arguments. For the reasons articulated in *State v. Bunch,* 7th Dist. No. 06 MA 106, J.E. August 8, 2013 and *State v. Barnette,* 7th Dist. No. 06 MA 135, September 16, 2013, Appellant Brandon Moore's Delayed Application for Reconsideration is denied. DeGenaro, P.J., dissents, see dissenting opinion.

Vukovich, J., concurs.
Waite, J., concurs.

DeGenaro, P.J. dissents.

{¶3}    Because Moore has no other avenue to make this argument, Moore's delayed motion for reconsideration should be granted.  App.R. 14(B) provides delayed reconsideration "pursuant to App. R. 26(A) shall not be granted except on a showing of *extraordinary circumstances*."  That showing has been made here; namely, a United States Supreme Court retroactive holding involving a criminal constitutional issue.  We would be considering an arguably valid extension of a constitutional argument which was not available to Moore when his case was before the trial court, this Court and the Ohio Supreme Court in either his direct or second appeal.  Significantly, the day *Graham* was announced, Moore filed his pro-se notice of appeal in *Moore V,* arguing that his sentence was unconstitutional pursuant to *Graham*; however the panel refused to address that argument, suggesting in dicta the issue was barred by res judicata and could be raised via post-conviction proceedings.

{¶4}    Turning to the merits of Moore's motion, R.C. 2929.20 enacted by the Ohio Legislature subsequent to *Graham* provides a constitutionally meaningful opportunity to seek parole or judicial release.  Thus, on its face, Moore's argument fails.  However, under the facts of this case, Moore's sentence may be so long as to still impose a de facto life sentence.  Accordingly, Moore's motion for reconsideration should be granted, and the case remanded to the trial court.

### Facts and Procedural History

{¶5}    This is Moore's seventh proceeding before this court.  In October 2002, Moore was convicted following a jury trial of 12 counts of aggravated robbery, rape, complicity to rape, kidnapping, conspiracy to commit aggravated robbery, and aggravated menacing, along with 11 firearm specifications pursuant to R.C. 2941.145(A). These offenses arose from a brutal gang rape by Moore, Chaz Bunch, and two others.  The vicious attack began with the defendants abducting the victim while she was leaving her place of employment and driving her to a secluded location, while Moore digitally raped her.  Arriving at a dead end street, Moore and Bunch proceeded to vaginally, orally and anally rape the victim multiple times as well as simultaneously orally and vaginally raping

her, all at gunpoint. Telling her attackers she was pregnant in the hope of stopping the attack, the other two defendants eventually stopped the rapes; the victim was escorted to her car, when she was finally able to escape, after being told they knew who she was and that she and her family would be killed if she reported the incident. *State v. Moore (Moore I),* 161 Ohio App.3d 778, 2005-Ohio-3311, 832 N.E.2d 85, ¶3-9. The trial court's October 29, 2002 judgment entry imposed maximum consecutive sentences on all counts, except for the misdemeanor menacing charge to be served concurrently with the other sentences, and consecutive sentences on the 11 firearm specifications, for an aggregate sentence of 141 years.

{¶6} The procedural history of Moore's six prior appeals is detailed in *State v. Moore* (Moore VI), 7th Dist. No. 12 MA 91, 2013-Ohio-1431, 990 N.E.2d 165:

On direct appeal, this court affirmed in part, reversed in part, and remanded the matter for resentencing. In response to Moore's argument that the trial court failed to merge his firearm specifications, this court directed that upon remand, the trial court was limited to imposing, at most, one prison term for the firearm specifications contained in counts two and three of the indictment and, at most, three separate prison terms for the firearm specifications in counts one, four, five, six, seven, eight, nine, and ten. *State v. Moore (Moore I),* 161 Ohio App.3d 778, 2005-Ohio-3311, 832 N.E.2d 85, ¶ 115 (7th Dist.). Moore applied to reopen his direct appeal based on an alleged speedy trial violation, which was denied. *State v. Moore,* 7th Dist. No. 02 CA 216, 2005-Ohio-5630, 2005 WL 2715460.

Upon remand for resentencing, at the September 7, 2005 hearing and in the judgment entry entered that day, the trial court merged some of the firearm specifications and acknowledged the dismissal of one count, as directed by this court. The trial court then sentenced Moore to maximum, consecutive sentences on the remaining counts for an aggregate sentence of 112 years. Moore then filed his second appeal. This court vacated his

sentence based on *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, and remanded the matter for resentencing. *State v. Moore (Moore II),* 7th Dist. No. 05 MA 178, 2007-Ohio-7215, 2007 WL 4696843.

The trial court held a resentencing hearing on January 24, 2008, and it reimposed the 112 year prison term and designated Moore as a Tier III sexual offender. Moore filed a third appeal, and this court upheld his sentence. *State v. Moore (Moore III),* 7th Dist. No. 08 MA 20, 2009-Ohio-1505, 2009 WL 825758.

On December 30, 2009, Moore filed a petition for writ of mandamus and/or procedendo with this court, seeking to compel the trial judge to issue a final appealable judgment entry of sentence in compliance with Crim.R. 32(C) as set forth in *State v. Baker,* 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163. Moore argued that he was entitled to a new sentencing hearing and a revised sentencing entry that specified his manner of conviction. This court granted the writs in part and ordered the trial court to issue a revised sentencing entry that complied with Crim.R. 32(C). *State ex rel. Moore v. Krichbaum (Moore IV),* 7th Dist. No. 09 MA 201, 2010-Ohio-1541, 2010 WL 1316230.

On April 7, 2010, Moore filed a pro-se motion to dismiss all further proceedings due to unreasonable delay in sentencing. On April 20, 2010, the trial court issued a nunc pro tunc judgment entry to comply with Crim.R. 32(C) and re-imposed the 112 year term of incarceration. Moore then appealed on May 17, 2010. On May 19, 2010, the trial court overruled appellant's motion to dismiss all further proceedings due to unreasonable delay in sentencing. This court dismissed Moore's appeal on the basis of *State v. Lester,* 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142. This court found that the nunc pro tunc judgment entry issued to comply with Crim.R. 32(C) was not a final order subject to appeal. *State v. Moore (Moore V),* 7th Dist. No. 10–MA–85, 2011-Ohio-6220, 2011 WL 6017942.

This brings us to the instant matter and Moore's sixth appeal. On March 30, 2012, Moore filed a pro-se motion for resentencing, arguing that the trial court designating him a Tier III sex offender was error pursuant to *State v. Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108. He also filed a pro-se motion to correct the void portion of sentence, claiming the trial court failed to correctly merge his firearm specifications. On April 26, 2012, the State filed motions to dismiss in response to each of these motions.

*Moore VI*, ¶4-9.

{¶7}   In *Moore VI* this court rejected most of Moore's arguments, reversing and remanding the matter solely for a sex offender classification hearing pursuant to S.B. 5, known as Megan's Law, Moore having been classified pursuant to the Adam Walsh Act.

**Untimely Application for Reconsideration**

***General Test***

{¶8}   With this procedural history in mind, we consider the timeliness of Moore's motion. This court's decision in *Deutsche Bank Natl. Trust Co. v. Knox*, 7th Dist. No. 09 BE 4, 2011-Ohio-421 (*Deutsche Bank II*) is instructive here; not only does it outline general principles for considering delayed motions for reconsideration, the specific facts in that case support granting Moore's motion here.  The panel analyzed the interplay between App.R. 26 and 14 as follows:

App.R. 26, which provides for the filing of an application for reconsideration in this court, includes no guidelines to be used in the determination of whether a decision is to be reconsidered.  The test generally applied is whether the motion for reconsideration calls to the attention of the court an obvious error in its decision or raises an issue for our consideration that was either not at all or was not fully considered by us when it should have been. An application for reconsideration is not designed for use in instances where a party simply disagrees with the

conclusions reached and the logic used by an appellate court. Rather, App.R. 26 provides a mechanism by which a party may prevent miscarriages of justice that could arise when an appellate court makes an obvious error or renders an unsupportable decision under the law.

Initially, we must address the timeliness of appellee's motion. * * * Yet even though appellee's motion was late, we may still consider it. This court has held that a motion for reconsideration can be entertained even though it was filed beyond the ten-day limit if the motion raises an issue of sufficient importance to warrant entertaining it beyond the time limit. In this case, we find that appellee's motion raises an issue of sufficient importance so as to warrant its consideration.

Furthermore, App.R. 26 is not jurisdictional. App.R. 14(B) provides as much, stating:

"For good cause shown, the court, upon motion, may enlarge or reduce the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of the prescribed time. The court may not enlarge or reduce the time for filing a notice of appeal or a motion to certify pursuant to App.R. 25. *Enlargement of time to file an application for reconsideration * * * shall not be granted except on a showing of extraordinary circumstances.*" (Emphasis added.)

Thus, App.R. 14(B) gives this court jurisdiction to enlarge the time to file an application for reconsideration.

*Deutsche Bank II*, ¶2-6 (internal citations omitted).

**{¶9}** In *Deutsche Bank II,* the appellee asked to supplement the record with a transcript that had been ordered but due to a clerical mistake had not been filed on appeal, and then for the court to reconsider its decision in light of the supplemented record. In the underlying case, *Deutsche Bank Natl. Trust Co. v. Knox,* 7th Dist. No. 09-BE-4, 2010-Ohio-3277 (*Deutsche Bank I),* the panel had reversed and remanded the trial

court, in part, because of the absence of the transcript. *Deutsche Bank* at ¶39-41. Granting leave to supplement the record and reconsideration in *Deutsche Bank II,* the panel reiterated that its original decision was due, in part, to the absence of that transcript, and that it would have decided the case otherwise had the missing transcript been in the record. Deutsche *Bank II* at ¶10, vacating its reversal in *Deutsche Bank I* and affirming the trial court's decision. *Deutsche Bank II* at ¶14.

### *Extraordinary Circumstances*

**{¶10}** Absent from the analysis in *Deutsche Bank II* is a finding that the panel had made an obvious error or omission in the original decision, an apparent requirement to grant reconsideration under App.R. 26. However, in the interest of justice, the panel determined that appellee's showing of extraordinary circumstances as contemplated by App.R. 14, was sufficient for App.R. 26 purposes as well. *Deutsche Bank II* at ¶3. "The Ohio Supreme Court has held that in this unique type of situation where there was an accidental omission of part of a transcript, reconsideration should be allowed in light of the accidentally omitted transcript portion." *Deutsche Bank II* at ¶9, citing *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 222–23, 480 N.E.2d 802 (1985).

**{¶11}** Similarly, in *State v. Degens*, 6th Dist. No. L-11-1112, 2011-Ohio-3711, where the appellant was seeking reconsideration of the appellate court's decision denying bail and a stay of a four year prison sentence pending appeal, the Sixth District granted reconsideration and moreover vacated its prior decision granting bail and a stay:

> Although appellant's motion neither calls to our attention an obvious error in our prior decision nor raises an issue that was not considered or not fully considered when it should have been, we find in the interests of justice that appellant's motion for reconsideration should be granted.

*Degens* at ¶5.

**{¶12}** Because Moore filed his reconsideration motion well beyond the 10 days provided by App.R. 26(A), we look to App.R. 14 for guidance. In *Deutsche Bank II,* a civil case where a part of the transcript was omitted, and *Degens*, a criminal case involving a

four year sentence, reconsideration was granted on the basis of the interest of justice, extraordinary circumstances having been shown based upon those facts: no error or omission was found in the appellate panel's prior decision. Given this is a criminal matter where an 112 year sentence was imposed, and Moore is arguing a Supreme Court decision involving the Eighth Amendment retroactively applies to his sentence; Moore has established extraordinary circumstances warranting delayed reconsideration. To do otherwise in this narrow circumstance would create a miscarriage of justice that relief under App.R. 26 was enacted to avoid.

{¶13} Significantly, the day *Graham* was announced, Moore filed his pro-se notice of appeal in *Moore V.* In that appeal, Moore argued that his sentence did not comply with Crim.R. 32 and was unconstitutional pursuant to *Graham.* The panel held that pursuant to *State v. Lester,* 2011-Ohio-5204, 130 Ohio St.3d 303, 958 N.E.2d 142, the clerical correction the trial court made to Moore's original sentencing entry was not a final appealable order and dismissed the appeal. *Moore V*, ¶21-2. Thus, it did not reach the merits of Moore's *Graham* argument; suggesting in dicta the issue was barred by res judicata and could be raised via post-conviction proceedings. *Id.*, ¶33.

### No Other Available Remedy

{¶14} Reconsideration of our prior decision is warranted to avoid a manifest injustice as Moore has no other avenue available to raise this constitutional challenge. Moore is correct that R.C. 2953.23 does not permit a non-capital defendant to raise a constitutional challenge to his sentence via post-conviction petition. *State v. Barkley,* 9th Dist. No. 22351, 2005-Ohio-1268 ¶11. *Contra Moore V,* in dicta. Further, as discussed above, he is correct that App.R. 14(B) only requires an extraordinary circumstance with respect for *reason* for the delayed filing, not the *length* of the delay. *Contra* App.R. 5(A), and App.R. 26(B), requiring a showing good cause for the length in the delay before filing a motion for a delayed appeal or reopening, respectively.

{¶15} Nor can Moore raise this claim via a state habeas petition. "Whoever is unlawfully restrained of his liberty, or entitled to the custody of another, of which custody such person is unlawfully deprived, may prosecute a writ of habeas corpus, to inquire into

the cause of such imprisonment, restraint, or deprivation." R.C. 2725.01. Because as a matter of law it is an open question in Ohio as to how much of a lengthy sentence a juvenile offender must serve before being eligible to seek judicial release or parole, Moore cannot state that he is unlawfully in custody; his habeas claim is not ripe.

{¶16} Nor can Moore raise this claim via a federal habeas petition. Pursuant to The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) a retroactive application of *Graham* fails in federal habeas proceedings because a defendant cannot establish that the state court sentence was "'contrary to, or involved an unreasonable application of, clearly established Federal law.' 28 U.S.C. § 2254(d)(1). The Supreme Court has recently clarified that 'clearly established Federal Law' means the law that existed at the time of 'the last state-court adjudication on the merits.' *Greene v. Fisher*, –— U.S. ——, 132 S.Ct. 38, 45, 181 L.Ed.2d 336 (2011)." *Bunch v. Smith,* 685 F.3d 546, 549 (6th Cir. 2012) (*Graham* challenge to 89 year sentence rejected under AEDPA procedural parameters). Similarly, in *Goins v. Smith,* No. 4:09-CV-1551, 2012 WL 3023306 (N.D.Ohio July 24, 2012) the district court rejected Goins' habeas petition primarily pursuant to the Sixth Circuit's AEDPA analysis in *Bunch.* Because *Graham* was not the clearly established law at the time Moore's case was being considered by the trial court and this court, the AEDPA bars federal habeas relief on that basis. Thus, if Moore would raise *Graham* in a federal habeas petition, it would be rejected on procedural grounds as it had been in *Bunch* and *Goins.*

### Graham v. Florida

{¶17} Turning to the merits of Moore's argument, he contends that his 112 year sentence deprives him of a meaningful opportunity to obtain release as contemplated by *Graham*, because in effect the trial court imposed a life sentence, and indicated as much at sentencing. In *Graham,* by a 5-4 vote, the Supreme Court held that, *categorically*, nonhomicide juvenile offenders cannot be sentenced to life without parole. A related issue currently pending before the Ohio Supreme Court in *State v. Long,* Case No. 2012-1410 is whether it is constitutional to impose a *non-mandatory* sentence of life without the possibility of parole upon a nonhomicide juvenile defendant. That this issue is presently

pending before the Ohio Supreme Court lends further support to hearing Moore's argument herein.

**{¶18}** In the underlying case in *Long*, the First District held that it was constitutional, reasoning that in *Graham* the life sentence in Florida was mandatory, whereas it is discretionary in Ohio. *State v. Long,* 1st Dist. No. C-110160, 2012-Ohio-3052, *appeal accepted*, 133 Ohio St.3d 1502, 2012-Ohio-5693, 979 N.E.2d 348 (oral argument on June 11, 2013). However, in *Graham* the majority drew no such distinction; it held the Eighth Amendment prohibited the imposition of a life without parole sentence upon a juvenile nonhomicide offender. *Graham,* 130 S.Ct. at 2034. That prohibition was later extended to juvenile homicide offenders in *Miller v. Alabama,* 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

**{¶19}** Moore argues here that under an extension of *Graham's* categorical holding, a *de facto* life sentence without the possibility of parole, i.e., an extraordinarily long sentence (in this case 112 years) that becomes in all practicality a life sentence, though not *explicitly* so imposed, is unconstitutional. This precise issue was concededly left open by the majority in *Graham:*

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. *What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.* It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the *Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender*, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before

adulthood will remain behind bars for life. It does forbid States from making the judgment at the outset that those offenders never will be fit to reenter society. (Emphasis Added)

*Graham,* 130 S.Ct. at 2030.

**{¶20}** The majority in *Graham* signaled that it may be constitutionally valid to impose lengthy sentences upon nonhomicide juvenile offenders whose crimes are especially heinous, brutal, depraved and grotesque; and moreover, after a meaningful opportunity to demonstrate maturity and rehabilitation, to keep a juvenile offender incarcerated for their natural life if they prove to be irredeemable.  But an initial, outright life without parole sentence is constitutionally prohibited.  *Id.*  The analysis of Chief Justice Roberts in his concurring in judgment opinion, concluding that the sentencing decision in these circumstances should be made on a case by case basis, alludes to the issue Moore presents here:

> So much for Graham. But what about Milagro Cunningham, a 17–year–old who beat and raped an 8–year–old girl before leaving her to die under 197 pounds of rock in a recycling bin in a remote landfill? See Musgrave, Cruel or Necessary? Life Terms for Youths Spur National Debate, Palm Beach Post, Oct. 15, 2009, p. 1A. Or Nathan Walker and Jakaris Taylor, the Florida juveniles who together with their friends gang-raped a woman and forced her to perform oral sex on her 12–year–old son? See 3 Sentenced to Life for Gang Rape of Mother, Associated Press, Oct. 14, 2009. The fact that Graham cannot be sentenced to life without parole for his conduct says nothing whatever about these offenders, or others like them who commit nonhomicide crimes far more reprehensible than the conduct at issue here. The Court uses Graham's case as a vehicle to proclaim a new constitutional rule—applicable well beyond the particular facts of Graham's case—that a sentence of life without parole imposed on

*any* juvenile for *any* nonhomicide offense is unconstitutional. This categorical conclusion is as unnecessary as it is unwise.

A holding this broad is unnecessary because the particular conduct and circumstances at issue in the case before us are not serious enough to justify Graham's sentence. In reaching this conclusion, there is no need for the Court to decide whether that same sentence would be constitutional if imposed for other more heinous nonhomicide crimes.

* * *

In any event, the Court's categorical conclusion is also unwise. Most importantly, it ignores the fact that some nonhomicide crimes—like the ones committed by Milagro Cunningham, Nathan Walker, and Jakaris Taylor— are especially heinous or grotesque, and thus may be deserving of more severe punishment.

*Graham,* 130 S.Ct. at 2041 (Roberts, C.J. concurring in judgment)

**{¶21}** The issue raised by Moore in this case, where the juvenile's sentence is so lengthy that, in effect, a life sentence without the possibility of parole was imposed in contravention of the Eighth Amendment, was expressly raised by Justice Thomas in his dissenting opinion, albeit framed from the State's perspective rather than the juvenile offender. How long of a sentence can the trial court impose, without violating the Eighth Amendment, where it finds the crime to be exceptionally depraved and rare in its brutality:

Both the Court and the concurrence claim their decisions to be narrow ones, but both invite a host of line-drawing problems to which courts must seek answers beyond the strictures of the Constitution. The Court holds that "[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime," but must provide the offender with "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Ante,* at 2030. But what, exactly, does such a "meaningful" opportunity entail? When must it occur? And

what Eighth Amendment principles will govern review by the parole boards the Court now demands that States empanel? The Court provides no answers to these questions, which will no doubt embroil the courts for years.

*Graham,* 130 S.Ct. at 2057, (Thomas, J., dissenting.)

**{¶22}** Thus, the Supreme Court is apparently unanimous in foreseeing that a crime so heinous, even though committed by a juvenile, would warrant imposing a sentence so long that, once a 'meaningful opportunity' to establish rehabilitation has been afforded, the juvenile still would remain incarcerated for their natural life. The question Moore's case presents here is where to draw that sentencing line.

**{¶23}** Moore argues that according to the Ohio Department of Rehabilitation and Correction, he and three other nonhomicide juvenile offenders, sentenced by the same trial judge, have the longest sentences in Ohio. However, a review of the facts from the direct appeals of these four juveniles, Moore and his co-defendant Bunch, summarized above, and co-defendants Chad Barnette and James Goins, demonstrate they were involved in two separate criminal incidents that were truly horrifying crimes rare for their brutality and depravity. *Barnette I; State v. Goins,* 7th Dist. No. 02 CA 68, 2005-Ohio-1439; *State v. Moore,* 7th Dist. No. 02 CA 216, 161 Ohio App.3d 778, 2005-Ohio-3311, 832 N.E.2d 85, *State v. Bunch,* 7th Dist. No 02 CA 196, 2005-Ohio-3309. Nonetheless, the Supreme Court has held that juvenile offenders, consistent with the heinous nature of their crimes, must be given a 'meaningful opportunity' at some point during the course of their sentence, to establish they have rehabilitated; or after that review are found to be irredeemable and must remain incarcerated for their natural lives. *Graham,* 130 S.Ct. at 2030.

### R.C. 2929.20 Affords Meaningful Review

**{¶24}** Since Moore's original sentencing, not only has *Graham* been decided, Ohio's judicial release statute has been modified, which may afford Moore the

constitutionally required 'meaningful opportunity' to prove he has been rehabilitated and eligible for parole as contemplated by *Graham*.

**{¶25}** R.C. 2929.20, governing judicial release, now provides in pertinent part relative to Moore's sentence:

(A)(1)(a) Except as provided in division (A)(1)(b) of this section, "eligible offender" means any person who, *on or after April 7, 2009, is serving a stated prison term that includes one or more nonmandatory prison terms.* * * *

(B) On the motion of an eligible offender or upon its own motion, the sentencing court may reduce the eligible offender's aggregated nonmandatory prison term or terms through a judicial release under this section.

(C) An eligible offender may file a motion for judicial release with the sentencing court within the following applicable periods:
* * *

(4) If the aggregated nonmandatory prison term or terms is more than five years but not more than ten years, the eligible offender may file the motion not earlier than five years after the eligible offender is delivered to a state correctional institution or, if the prison term includes a mandatory prison term or terms, not earlier than five years after the expiration of all mandatory prison terms.

(5) If the *aggregated nonmandatory prison term or terms is more than ten years*, the eligible offender may file the motion *not earlier than* the later of the date on which *the offender has served one-half of the offender's stated prison term* or the date specified in division (C)(4) of this section. (Emphasis added.)

**{¶26}** The interplay between this statute and *Graham* was discussed in the unsuccessful habeas petition of James Goins. In *Goins v. Smith,* the District Court held that for AEDPA purposes *Graham* was not the clearly established law at the time Goins' 84 year sentence was imposed or reviewed on the merits for the last time, and his claim failed for that reason. Moreover, the District Court found that Goins failed to establish that *Graham* clearly applied to him, noting it was bound by the Sixth Circuit's decision in *Bunch v. Smith*, which held that because *Graham* was limited to juvenile offenders who were specifically sentenced to life without parole and no federal court had extended *Graham* to juvenile offenders sentenced to consecutive, fixed-term sentences for multiple nonhomicide offenses, the Sixth Circuit could not hold that Bunch's sentenced violated clearly established federal law. For that reason, the District Court could not so hold with respect to Goins, "even though an eighty-nine-year aggregate sentence [referring to Bunch, Goins' sentence is 84 years] without the possibility of parole may be—and probably is—the functional equivalent of life without the possibility of parole." *Goins v. Smith* at *6.*

**{¶27}** Having disposed of Goins' habeas petition on the narrow AEDPA procedural grounds, the District Court noted in dicta:

> Perhaps more important, the Ohio General Assembly has changed Ohio's sentencing law to markedly improve Goins's ability to pursue release. In particular, Ohio law now permits a defendant to re-quest judicial release after he has served a portion of his sentence. Accordingly, Goins now faces a mandatory prison term of 42 or 45 years, after which he will be able to apply for judicial release. [Doc. 23; 25]. See Ohio H. 86, 129th Gen. Assembly (eff. Sept. 30, 2011) (amending Ohio Rev. Code § 2929.20 to permit offenders to file a motion for judicial release with the sentencing court after the later of one-half of their stated prison terms or five years after expiration of their mandatory prison terms). Although he faces an

extremely long sentence, Goins does not face a sentence on the order of the one imposed in *Graham*.

*Goins v. Smith* at \*7.

**{¶28}** Similarly, Moore can avail himself of R.C. 2929.20. Thus, the ultimate issue to be resolved is whether the 'meaningful opportunity' contemplated by the Supreme Court in *Graham* is afforded Moore via the amendments made by the Ohio Legislature to Ohio's judicial release statute. After serving the mandatory portion and one-half of the nonmandatory portion of his 112 year sentence before he is eligible for parole, does that length of time afford Moore with the meaningful opportunity to be evaluated and a determination made whether he is rehabilitated or unredeemable? Based upon the analysis of the three separate opinions in *Graham,* and the dicta in *Goins v. Smith*, on its face, R.C. 2929.20 affords Moore a meaningful review in conformity with the Eighth Amendment. Moore was fifteen when he committed the crimes, which were especially heinous and brutal, as recounted in his direct appeal. This warrants that he serve a lengthy sentence before he can be *considered* for judicial release, and be granted the opportunity to prove he is rehabilitated. *Graham* cannot be read to mean or even extended to mean, that upon that review Moore will be *granted* judicial release.

**{¶29}** What is clear from *Graham* is that if a juvenile offender is sentenced to, say, 200 years for multiple offenses, including mandatory and nonmandatory sentences, pursuant to R.C. 2929.20 he would have to serve 100 years before being eligible for parole, this would not be constitutional under *Graham.* What if it was 75 years, or 50 years? An explicit versus de facto life sentence is a distinction without a difference. In any event, the determination of whether R.C. 2929.20 provides a juvenile nonhomicide offender a meaningful opportunity to demonstrate rehabilitation must be made on a case by case basis, in order to consider the character of the juvenile, the facts supporting the offenses, and the length of the sentence. Moore was 15 years old at the time he committed these heinous crimes, and the trial court imposed a 112 year aggregate sentence consisting of mandatory and non-mandatory terms. The trial court was clear

that the lengthy sentence was imposed to ensure Moore never left the penitentiary; thus imposing a de facto life sentence.

{¶30} Pursuant to statute it appears that Moore may have to serve approximately 60 years of his sentence before he could seek judicial release, at the age of 75. However, it would be premature for us to determine whether or not Moore's 112 year sentence is unconstitutional in light of the nature of his crimes. As the trier of fact, the trial court must have the first opportunity to apply the holding in *Graham* within the context of R.C. 2929.20, and impose a constitutional sentence commensurate with the rarity and severity of Moore's crimes.

### Conclusion

{¶31} Moore's delayed motion for reconsideration should be considered in the interest of preventing a manifest injustice, because a criminal defendant should have some mechanism to seek review of an asserted retroactive constitutional protection. Moreover, Moore in fact raised the issue in *Moore V* and we declined to address the issue; thus we should do so now.

{¶32} As to the merits, the United States Supreme Court has made it clear that as a category, juvenile offenders, irrespective of the nature of their crimes, may not be *explicitly* sentenced to life without the possibility of parole; they must *categorically* be afforded a meaningful opportunity to establish they have rehabilitated and can be paroled. At the heart of the Court's decisions in *Graham* and *Miller* is that juvenile offenders *as a category* fundamentally differ from adult offenders. Given those holdings and underlying rationale, it would appear that juvenile offenders *implicitly* sentenced to life without parole via consecutive maximum sentences for multiple offenses, which results in *no opportunity for parole* violates the Eight Amendment. Where a juvenile who has committed 'truly horrifying crimes' receives a *de facto* life sentence for one or multiple offenses, that juvenile must, nonetheless, be eligible, at some point, to be evaluated and a determination made whether they are rehabilitated, or that they "may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of

nonhomicide crimes committed before adulthood will remain behind bars for life. It does forbid States from making the judgment at the outset that those offenders never will be fit to reenter society." *Graham,* 130 S.Ct. 2030.

{¶33}  Subsequent to the decision in *Graham*, the Ohio Legislature amended R.C. 2929.20 to afford juvenile and adult offenders sentenced to a non-mandatory sentence of more than 10 years the opportunity to seek judicial release after having served one-half of their stated non-mandatory sentence.   As this appears to afford the 'meaningful opportunity' contemplated by *Graham,* on its face, Moore's argument fails.   However, under the facts of this case, Moore's sentence may be so long as to still impose a de facto life sentence.   Accordingly, Moore's motion for reconsideration should be granted, and the case remanded to the trial court.