O’Connor, C.J.,
concurring.
{¶ 101} I fully concur in the majority opinion’s holding that Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), prohibits the imposition, in *584 nonhomicide cases, of a sentence that exceeds a juvenile offender’s life expectancy. I write separately to address the dissenting justices’ suggestion that this cause is not properly before us and to explain why this appeal satisfies the extraordinary-circumstances standard for granting an application for delayed reconsideration.
ANALYSIS
{¶ 102} The' first dissenting opinion would hold on both procedural and substantive grounds that the appeal is meritless. The second dissenting opinion also suggests that the cause is not properly before us but does not reach the merits of the claims raised by appellant, Brandon Moore, even though the propriety of the procedural analysis turns largely on the substantive analysis of whether extraordinary circumstances warrant allowing an application for delayed reconsideration. However framed, both dissenting opinions ultimately assert that the Seventh District Court of Appeals in this case did not abuse its discretion in denying Moore’s application because, at the time of that decision, there purportedly was ample authority for the notion that Graham did not apply to lengthy term-of-years sentences. But the authority on which the dissenting justices rely is less compelling than the dissenting justices suggest.

The standard for granting an application for delayed reconsideration

{¶ 103} “ ‘App.R. 26 provides a mechanism by which a party may prevent miscarriages of justice that could arise when an appellate court makes an obvious error or renders an unsupportable decision under the law.’ ” Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc., 10th Dist. Franklin No. 03AP-269, 2004-Ohio-2715, 2004 WL 1172877, ¶ 2, quoting State v. Owens, 112 Ohio App.3d 334, 336, 678 N.E.2d 956 (11th Dist.1996).
{¶ 104} The plain language of App.R. 14(B) permits a court to enlarge the time to reconsider a judgment under App.R. 26(A)(1) upon a showing of extraordinary circumstances. Although the extraordinary-circumstances standard is a limited one, Ohio courts have recognized those circumstances in three categories of cases.
{¶ 105} In the first category, the Seventh District has held that omissions in records can constitute an extraordinary circumstance warranting delayed reconsideration. See, e.g., Deutsche Bank Natl. Trust Co. v. Knox, 7th Dist. Belmont No. 09-BE-4, 2011-Ohio-421, 2011 WL 334508, ¶ 9. Accord Reichert v. Ingersoll, 18 Ohio St.3d 220, 222-223, 480 N.E.2d 802 (1985). Because this category of cases does not encompass the present case, it is not discussed in this opinion.
{¶ 106} The second category of cases features the announcement of a new rule of law that applies directly to a pending appeal, which is the basis for the *585 majority’s conclusion that the cause is properly before us. I agree that Ohio appellate courts routinely recognize that extraordinary circumstances exist when this court issues an opinion that is directly on point with the issue raised on appeal. See, e.g., State v. Lawson, 2013-Ohio-803, 984 N.E.2d 1126, ¶ 6 (10th Dist.); Lyttle v. Ohio, 12th Dist. Butler No. CA2010-04-089, 2012-Ohio-3042, 2012 WL 2520466, ¶ 5; State v. Cedeno, 192 Ohio App.3d 738, 2011-Ohio-674, 950 N.E.2d 582, ¶ 3 (1st Dist.); State v. Truitt, 1st Dist. Hamilton No. C-050188, 2011-Ohio-1885, 2011 WL 1485456, ¶ 3.
{¶ 107} The third category of cases in which an application for delayed reconsideration may be granted consists of cases in which the question presented in the application raises an issue of sufficient importance to warrant entertaining it beyond the ten-day limit. See, e.g., Carroll v. Feiel, 1 Ohio App.3d 145, 145-146, 439 N.E.2d 962 (8th Dist.1981). Notably, the Seventh District, the appellate court that denied Moore’s application, has recognized that this category exists. State v. Boone, 114 Ohio App.3d 275, 277, 683 N.E.2d 67 (7th Dist.1996).
Graham is a decision of sufficient importance to warrant granting Moore’s application for delayed reconsideration of his lengthy term-of-years sentence
{¶ 108} In this case, Moore received a 112-year aggregate sentence for nonhomicide offenses that he committed when he was 15 years old. At sentencing, Judge R. Scott Krichbaum opined that Moore could not be rehabilitated and baldly informed Moore of the court’s intention to ensure that Moore would never be released from confinement.
{¶ 109} Notwithstanding Moore’s significant crimes, such a penalty is exactly what a majority of the United States Supreme Court agreed was unconstitutional in Graham. But despite the significance of the Graham claim raised by Moore, the court of appeals summarily dispensed with it:
We are unpersuaded by Moore’s arguments. For the reasons articulated in State v. Bunch, 7th Dist. No. 06 MA 106, J.E. August 8, 2013 and State v. Barnette, 7th Dist. No. 06 MA 135, September 16, 2013, Appellant Brandon Moore’s Delayed Application for Reconsideration is denied.
2013-Ohio-5868, 2013 WL 6918852, ¶ 2.
{¶ 110} Consideration of youth in sentencing is no longer a subject of political or jurisprudential debate; the high court has decided Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), Graham, and Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), and we may not ignore those commands any more than the court of appeals or Judge Krichbaum may do so.
*586 {¶ 111} The gravity of the Supreme Court’s decision in Graham is apparent from its holding that the Eighth Amendment categorically bars a sentence of life without parole for juvenile nonhomicide offenders. Graham, 560 U.S. at 82, 130 S.Ct. 2011, 176 L.Ed.2d 825. The court not only compared life-without-parole sentences for juveniles to the death penalty, id. at 69; see also Miller at 470, but also noted that life-without-parole sentences are “irrevocable,” Graham at 69. As the court explained, a sentence of life without parole
deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency—the remote possibility of which does not mitigate the harshness of the sentence * * *. [T]his sentence “means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days.”
(Second brackets sic.) Id. at 69-70, quoting Naovarath v. State, 105 Nev. 525, 526, 779 P.2d 944 (1989).
{¶ 112} Judges must treat juveniles differently, no matter how horrific their crimes may be. And different treatment of juveniles in nonhomicide cases requires “some meaningful opportunity” to reenter society, id. at 75. The trial court’s sentence in this case is irreconcilable with Graham, and the court of appeals’ summary denial of Moore’s application for delayed reconsideration is irreconcilable with the extraordinary-circumstances standard applicable to App.R. 26(A). As Judge DeGenaro stated in her dissent from the court of appeals’ refusal to consider Moore’s claim on its merits:
Because Moore has no other avenue to make this argument, Moore’s delayed application for reconsideration should be granted. App.R. 14(B) provides delayed reconsideration “pursuant to App.R. 26(A) shall not be granted except on a showing of extraordinary circumstances.” That showing has been made here; namely, a United States Supreme Court retroactive holding involving a criminal constitutional issue. We would be considering an arguably valid extension of a constitutional argument which was not available to Moore when his case was before the trial court, this Court and the Ohio Supreme Court in either his direct or second appeal. Significantly, the day Graham was announced, Moore filed his pro-se notice of appeal in [State v. Moore, 7th Dist. No. 10-MA-85, 2011-Ohio-6220, 2011 WL 6017942], arguing that his sentence was unconstitutional *587 pursuant to Graham; however the panel refused to address that argument, suggesting in dicta the issue was barred by res judicata and could be raised via post-conviction proceedings.
(Emphasis sic.) 2013-Ohio-5868, 2013 WL 6918852, at ¶ 3 (DeGenaro, J., dissenting).
{¶ 113} Even assuming arguendo that “[rjelief under App.R. 14(B) is subject to the court of appeals’ discretion,” dissenting opinion, French, J., at ¶ 193, citing L.R. Patrick, Inc. v. Karlsberger & Assocs., Architects, Inc., 10th Dist. Franklin No. 81AP-70, 1981 WL 3231, *1 (June 4, 1981), we are not compelled to rubber-stamp the ruling of the court of appeals. And as explained below, the authorities cited by the dissenting justices do not undermine the majority’s conclusion that the appellate court abused its discretion in refusing to grant Moore’s application for delayed reconsideration.
{¶ 114} Before proceeding, I note my agreement with the dissenting justices that “abuse of discretion” in a criminal case means more than an error of law or judgment and implies that the lower court’s attitude was unreasonable, arbitrary, or unconscionable. See State v. Adams, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980), citing Steiner v. Custer, 137 Ohio St. 448, 31 N.E.2d 855 (1940); see also Steiner at 451 (an abuse of discretion is “ ‘a view or action “that no conscientious judge, acting intelligently, could honestly have taken” ’ ”), quoting Long v. George, 296 Mass. 574, 579, 7 N.E.2d 149 (1937), quoting Davis v. Boston Elevated Ry. Co., 235 Mass. 482, 502, 126 N.E. 841 (1920). But “discretion” “ ‘ “means the equitable decision of what is just and proper under the circumstances,” ’ ” including the rights and interests of all parties, justice, and equity. Long at 578, quoting Paquette v. Fall River, 278 Mass. 172, 174, 179 N.E. 588 (1932), quoting The Styria v. Morgan, 186 U.S. 1, 9, 22 S.Ct. 731, 46 L.Ed. 1027 (1902). And “[jludicial discretion must be carefully—and cautiously—exercised before this court will uphold an outright dismissal of a case on purely procedural grounds.” Reichert, 18 Ohio St.3d at 222, 480 N.E.2d 802.

The dissents’ reliance on federal habeas law is improper

{¶ 115} Both dissents rely upon federal habeas decisions governed by the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), 28 U.S.C. 2254(d). Dissenting opinion of French, J., at ¶ 198, citing Bunch v. Smith, 685 F.3d 546, 550 (6th Cir.2012) (Graham did not “clearly establish” that consecutive, fixed-term sentences for juveniles are unconstitutional when they amount to “the practical equivalent of life without parole”), and Goins v. Smith, N.D.Ohio No. 4:09-CV-1551, 2012 WL 3023306, *6 (July 24, 2012), aff'd, 556 Fed.Appx. 434 (6th Cir.2014); dissenting opinion of Kennedy, J., at ¶ 157-161, citing Bunch v. Smith.
*588 {¶ 116} But a federal court hearing a habeas case must judge the merits of a prisoner’s claim by applying the “ ‘highly deferential’ ” standard imposed by AEDPA. Harrington v. Richter, 562 U.S. 86, 105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), quoting Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That standard forbids a federal court from granting habeas relief in a collateral attack on a state court’s judgment unless that decision was “contrary to” clearly established federal law, 28 U.S.C. 2254(d)(1), i.e., one in which “the state court applie[d] a rule different from the governing law set forth [by the Supreme Court] or * * * decide[d] a case differently than [the Supreme Court] has done on a set of materially indistinguishable facts.” Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002), citing Williams v. Taylor, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, in federal habeas review, reasonable, good-faith interpretations of federal constitutional precedent by state courts will stand even if subsequent federal constitutional decisions render them incorrect. See Lockhart v. Fretwell, 506 U.S. 364, 372-373, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). See also Harrington at 102 (“If this [AEDPA] standard is difficult to meet, that is because it was meant to be”); Bousley v. United States, 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (noting that a principal function of habeas corpus is “ ‘ “to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted” ’ ” and that a new rule of law does not apply on habeas review unless the rule is of such a nature that “without [it] the likelihood of an accurate conviction is seriously diminished” [brackets sic]), quoting Teague v. Lane, 489 U.S. 288, 312-313, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion), quoting Desist v. United States, 394 U.S. 244, 262, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969).
{¶ 117} Because the standard employed in AEDPA is so highly deferential to state courts, it is virtually impossible for a federal court sitting in habeas to give relief to a juvenile. Budder v. Addison, 169 F.Supp.3d 1213 (W.D.Okla.2016), appeal filed Apr. 6, 2016, is illustrative.
{¶ 118} In Budder, a 16-year-old committed horrific crimes: he cut the throat of another juvenile and stabbed her repeatedly on her stomach, arms, and legs, and after she dove from a moving car to escape him, he raped and sexually assaulted her. The trial judge sentenced him to two terms of life imprisonment without parole for the rapes, to life imprisonment for assault and battery with a deadly weapon, and to 20 years of imprisonment for sodomy, all sentences to be served consecutively. The state appellate court reversed in part in light of Graham, which was decided days after the juvenile’s sentencing, and modified the sentences for the rape convictions to life imprisonment with the possibility of parole. But even after that modification, the juvenile would not be eligible for parole until he had served almost 132 years in prison. Id. at 1215.
*589 {¶ 119} Although the federal habeas court recognized that the modified aggregate sentence remained the functional equivalent of life without parole, it nevertheless found that habeas relief was not warranted. As it explained, “the court is confronting the issue of the constitutionality of [the] petitioner’s sentences on habeas review, constrained by AEDPA’s ‘highly deferential standard * * * [which] demands that state-court decisions be given the benefit of the doubt.’ ” (Brackets sic.) Id. at 1220, quoting Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002). Applying the AEDPA standard, the court concluded that the petitioner’s sentences did not violate clearly established law. Id.
{¶ 120} If a federal court considering an AEDPA-controlled habeas petition cannot declare that three consecutive life sentences imposed on a juvenile who would not be eligible for parole until he had served nearly 132 years in prison violates the Eighth Amendment under Graham, there can be no doubt how “highly deferential” the AEDPA standard is.
{¶ 121} Federal habeas jurisdiction serves an important purpose. But we must remember that federal habeas review is driven at least as much by principles of finality, comity, and respect for the sovereignty of state courts as it is driven by principles of constitutional correctness. Harrington, 562 U.S. at 103, 131 S.Ct. 770, 178 L.Ed.2d 624; Painter, O’Sullivan v. Boerckel and the Default of State Prisoners’ Federal Claims: Comity or Tragedy?, 78 N.C.L.Rev. 1604, 1604-1606 (2000). See also Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv.L.Rev. 441, 442-444 (1963). And but for principles of finality, the rationales for AEDPA’s highly deferential standard are not ones that are applicable to the consideration of App.R. 26(A)(1) applications for reconsideration, nor have we previously suggested that they were.
{¶ 122} I am not oblivious to the importance of finality in criminal decisions. “The importance of finality in any justice system, including the criminal justice system,” should not be understated. Witt v. State, 387 So.2d 922, 925 (Fla.1980). But the benefits of finality must be balanced with principles of fairness. Ferguson v. State, 789 So.2d 306, 312 (Fla.2001). As the Florida Supreme Court has held,
The doctrine of finality should be abridged only when a more compelling objective appears, such as ensuring fairness and uniformity in individual adjudications. Thus, society recognizes that a sweeping change of law can so drastically alter the substantive or procedural underpinnings of a final conviction and sentence that the machinery of post-conviction relief is necessary to avoid individual instances of obvious injustice. Considerations of fairness and uniformity make it very “difficult to justify depriving *590 a person of his liberty or his life, under process no longer considered acceptable and no longer applied to indistinguishable cases.”
Witt at 925, quoting American Bar Association, Standards Relating to Post-Conviction Remedies 37 (1968).
{¶ 123} This is particularly true when, as occurred in Graham, a court announces a new rule of law that applies retroactively.[1] See, e.g., Moore v. Biter, 725 F.3d 1184, 1190-1191 (9th Cir.2013); In re Sparks, 657 F.3d 258, 260 (5th Cir.2011); Loggins v. Thomas, 654 F.3d 1204, 1221 (11th Cir.2011). See also In re Williams, 759 F.3d 66, 70 (D.C.Cir.2014) (permitting a prisoner to file a successive habeas petition based on Graham claims because there was a sufficient showing that Graham applies retroactively); State v. Callaway, 658 So.2d 983, 987 (Fla.1995) (“The concern for fairness and uniformity in individual cases outweighs any adverse impact that retroactive application of the rule might have on decisional finality”).
{¶ 124} We who sit at the pinnacle of a state judiciary should be reluctant to adopt the limited standards of federal habeas jurisdiction as a proper proxy for the rigorous constitutional analysis that claims like Moore’s deserve. See State v. Ronquillo, 190 Was.App. 765, 361 P.3d 779, ¶ 24 (2015) (describing Bunch v. Smith, 685 F.3d 546, as “a habeas matter} ] [that] is unhelpful because of the restricted standard of review”); see also Danforth v. Minnesota, 552 U.S. 264, 280-281, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008) (describing Teague’s rule of nonretroactivity as one “fashioned to achieve the goals of federal habeas while minimizing federal intrusion into state criminal proceedings” and “intended to limit the authority of federal courts to overturn state convictions—not to limit a state court’s authority to grant relief for violations of new rules of constitutional law when reviewing its own State’s convictions”). Indeed, even courts that refuse to apply Graham to lengthy term-of-years aggregate sentences question the propriety of using federal habeas cases to do so. See State ex rel. Morgan v. State, 217 So.3d 266, 2016 WL 6125428, 272 (La.2016), fn. 8. The constitutional propriety of a 112-year aggregate sentence imposed on a defendant who committed the underlying crimes as a juvenile is a question that should be answered *591 carefully, based on federal and state constitutional precedent rather than a rigid federal statutory scheme that has no direct application to the question before us.

The dissents’ reliance on state court decisions is an unpersuasive, post hoc rationalization for the court of appeals’ abuse of discretion in refusing to consider Moore’s claims

{¶ 125} I turn now to the nonhabeas decisions cited by the dissenting justices. That authority is sparse and suspect.
{¶ 126} Both dissenting justices suggest that when the court of appeals denied Moore’s application for delayed reconsideration, numerous courts had held that Graham is inapplicable to lengthy term-of-years sentences. But the appellate court did not cite a single case that the dissenting justices rely upon here to support the appellate court’s decision. See 2013-Ohio-5868, 2013 WL 6918852. Moreover, the decisions cited by the dissenting justices do not support the court of appeals’ refusal to consider Moore’s Graham claim because some of those decisions were not extant at the time[2] and the ones that did exist are poorly reasoned attempts to avoid the holding in Graham.
{¶ 127} Justice French relies on two state court decisions cited in State v. Bunch, 7th Dist. Mahoning No. 06 MA 106 (Aug. 8, 2013), and State v. Barnette, 7th Dist. Mahoning No. 06 MA 135 (Sept. 16, 2013) (the two judgment entries cited in the court of appeals’ opinion summarily denying Moore’s application for delayed reconsideration)—State v. Kasic, 228 Ariz. 228, 265 P.3d 410 (Ariz.App. 2011), and Henry v. State, 82 So.3d 1084, 1089 (Fla.App.2012), quashed, 175 So.3d 675 (Fla.2015). Justice Kennedy includes Kasic in her analysis, which is more extensive but ultimately no more persuasive than Justice French’s.
{¶ 128} Kasic is wholly distinguishable from the present case. The defendant in Kasic committed a series of arsons and related crimes that spanned nearly a year and included crimes he committed as an adult. See Kasic at ¶ 11 and 12. There is no reason to believe that Graham has any application to defendants who commit crimes after they reach the age of majority. See Roper v. Simmons, 543 U.S. 551, 574, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (“The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to *592 rest”); State v. Bates, 464 S.W.3d 257, 268 (Mo.App.2015) (holding that Miller, which holds that the imposition of mandatory sentences of life without parole on defendants who committed their crimes while under the age of 18 violates the Eighth Amendment’s prohibition on “cruel and unusual punishments,” is applicable only to juveniles and not to those who commit their crimes after the age of 18 years); Humphrey v. Stewart, E.D.Mich. No. 2:15-cv-12638, 2015 WL 4967152, *4 (Aug. 20, 2015) (“Neither Graham nor Miller have been extended to adults offenders”).
{¶ 129} Henry, the other state court decision cited in Justice French’s dissent, is a Florida intermediate-appellate court decision that was pending on appeal at the time the Seventh District cited it in Bunch and Barnette. See Henry v. State, 107 So.3d 405 (Fla.2012) (announcing that the court had accepted jurisdiction of the cause).
{¶ 130} More importantly, it was subsequently quashed—unanimously—by the Florida Supreme Court. Henry v. State, 175 So.3d 675 (Fla.2015). In so doing, the Florida high court unequivocally concluded that Graham applies to juveniles who are sentenced to the functional equivalent of life without parole. Henry at 679-680. In language with direct application to Judge Krichbaum’s stated intention in sentencing Moore, it held, “Graham prohibits the state trial courts from sentencing juvenile nonhomicide offenders to prison terms that ensure these offenders will be imprisoned without obtaining a meaningful opportunity to obtain future early release during their natural lives based on their demonstrated maturity and rehabilitation.” Henry at 680. It then reiterated,
In light of the United States Supreme Court’s long-held and consistent view that juveniles are different—with respect to prison sentences that are lawfully imposable on adults convicted for the same criminal offenses—we conclude that, when tried as an adult, the specific sentence that a juvenile nonhomicide offender receives for committing a given offense is not dispositive as to whether the prohibition against cruel and unusual punishment is implicated. Thus, we believe that the Graham Court had no intention of limiting its new categorical rule to sentences denominated under the exclusive term of “life in prison.” Instead, we have determined that Graham applies to ensure that juvenile nonhomicide offenders will not be sentenced to terms of imprisonment without affording them a meaningful opportunity for early release based on a demonstration of maturity and rehabilitation. See Graham, 560 U.S. at 75, 130 S.Ct. 2011 [176 L.Ed.2d 825].
In light of Graham, and other Supreme Court precedent, we conclude that the Eighth Amendment will not tolerate prison sentences that lack a *593 review mechanism for evaluating this special class of offenders for demonstrable maturity and reform in the future because any term of imprisonment' for a juvenile is qualitatively different than a comparable period of incarceration is for an adult.
Henry at 680.
{¶ 131} Decisions like Kasic, Henry, Bunch, and State v. Brown, 118 So.3d 332 (La.2013), are unpersuasive for at least two reasons.
{¶ 132} First, as the Nevada Supreme Court has recognized, these decisions ignore that the United States Supreme Court did nothing in Graham to specifically limit its holding to offenders who were convicted of a single nonhomicide offense. State v. Boston, — Nev. -, 363 P.3d 453, 457 (2015). And Miller, which was decided after Graham but before the Seventh District’s denial of Moore’s application for delayed reconsideration, involved a juvenile offender who had been convicted of multiple crimes, see 567 U.S. at 466, 132 S.Ct. 2455, 183 L.Ed.2d 407, but the Supreme Court offered no indication in Miller that the fact that the juvenile had been convicted of multiple crimes affected its analysis.
{¶ 133} Second, these decisions ignore the foundational rationales for the high court’s prohibition on state court sentences, imposed at the outset, that forever prohibit consideration of a juvenile offender’s ability to reenter society. “[T]he teachings of the Roper/Graham/Miller trilogy require sentencing courts to provide an individualized sentencing hearing to weigh the factors for determining a juvenile’s ‘diminished culpability and greater prospects for reform’ when, as here, the aggregate sentences result in the functional equivalent of life without parole.” Bear Cloud v. State, 2014 WY 113, 334 P.3d 132, ¶ 33, quoting Miller at 471. Whether the principles of Graham apply in a given case should not turn “on the niceties of epidemiology, genetic analysis, or actuarial sciences in determining precise mortality dates” but, rather, on the Supreme Court’s repeated emphasis “in Roper, Graham, and Miller of the lessened culpability of juvenile offenders, how difficult it is to determine which juvenile offender is one of the very few that is irredeemable, and the importance of a ‘meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.’ ” State v. Null, 836 N.W.2d 41, 71-72 (Iowa 2013), quoting Graham, 560 U.S. at 75, 130 S.Ct. 2011, 176 L.Ed.2d 825.
{¶ 134} Lastly, I note that to the extent Justice Kennedy believes that Graham is distinguishable from this appeal, see dissenting opinion of Kennedy, J., at ¶ 154-155, her sole authority is Justice Alito’s dissenting opinion in Graham—a summary analysis that no other justice joined, see Graham at 124-125 (Alito, J., dissenting). But a dissent is just that: “[a] disagreement with a majority opinion,” Black’s Law Dictionary 574 (10th Ed.2014), without force of law or *594 precedential value. Even if Justice Alito’s dissenting opinion had persuasive value, it is not binding on this court. We must adhere to the majority opinions of the United States Supreme Court on federal constitutional matters because it is the ultimate arbiter of the federal Constitution, Baker v. Carr, 369 U.S. 186, 211, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), just as our trial and intermediate appellate courts must adhere to our majority opinions because we are the ultimate arbiters of Ohio law, Addis v. Howell, 137 Ohio App.3d 54, 57-58, 738 N.E.2d 37 (2d Dist.2000); accord Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).
CONCLUSION
{¶ 135} Graham is one of the most momentous decisions in American juvenile law. Given its significance, the stated intention of the sentencing judge in this case, the de facto life sentence he imposed, and the curtness with which the court of appeals denied Moore’s application to reconsider his sentence in light of Graham, I conclude that the appellate court abused its discretion in refusing to consider Moore’s claim. The court was not bound to accept his arguments, but it was bound to consider them more thoughtfully after allowing the application for delayed reconsideration.
{¶ 136} I concur fully in the majority opinion, which addresses the significant constitutional question that is properly before us and which holds that the court of appeals abused its discretion in failing to recognize that extraordinary circumstances were presented by Moore’s application, i.e., the unconstitutional imposition of a lengthy term-of-years sentence on a juvenile offender.

. The Supreme Court has explained the framework to be used in determining whether a rule announced should be applied retroactively to judgments in criminal cases that are already final on direct review, noting that although “a new rule is generally applicable only to cases that are still on direct review,” there are two exceptions: “A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a [1] “watershed rul[e] of criminal procedure” implicating the fundamental fairness and accuracy of the criminal proceeding.’” Whorton v. Bockting, 549 U.S. 406, 416, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007), quoting Saffle v. Parks, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), quoting Teague, 489 U.S. at 311, 109 S.Ct. 1060, 103 L.Ed.2d 334.

. Justice Kennedy includes an unpublished state intermediate-appellate court decision, State v. Merritt, Tenn.Crim.App. No. M2012-00829-CCA-R3CD, 2013 WL 6505145 (Dec. 10, 2013), and Vasquez v. Commonwealth, 291 Va. 232, 781 S.E.2d 920 (2016), as justifications for the court of appeals’ denial of Moore’s application for delayed reconsideration. But neither ease had been decided at the time that the court of appeals announced its decision in this case and thus cannot support the court of appeals’ denial of Moore’s application. Accordingly, I do not consider them in my analysis.